T.C. Memo. 1996-441


UNITED STATES TAX COURT


JAMES H. UPCHURCH, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 14784-88.              Filed September 26, 1996.


<u>Robert E. Kovacevich</u>, for petitioner.

<u>James W. Clark</u> and <u>Keith Medleau</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, <u>Judge</u>:  Respondent determined deficiencies in, additions to, and increased interest on Federal income tax for petitioner's 1980, 1981, 1982, and 1983 taxable years as follows:

| | | Additions to Tax | | |
|---|---|---|---|---|
| Year | Deficiency | Sec. 6653(a) | Sec. 6653(a)(1) | Sec. 6653(a)(2) |
| 1980 | $4,176 | $209 | --- | --- |
| 1981 | 5,373 | --- | $269 | [1] |
| 1982 | 5,335 | --- | 267 | [1] |
| 1983 | 2,573 | --- | 129 | [1] |

| | Additions to Tax | | Increased Interest |
|---|---|---|---|
| Year | Sec. 6659 | Sec. 6661 | Sec. 6621(c) |
| 1980 | $1,253 | --- | [2] |
| 1981 | 1,612 | --- | [2] |
| 1982 | 1,601 | [3]$1,333.75 | [2] |
| 1983 | --- | --- | [2] |

[1] 50 percent of the interest due on the deficiency.

[2] The entire underpayment of income tax is a substantial underpayment attributable to tax-motivated transactions under sec. 6621(c).

[3] For 1982 respondent, in an amendment to answer, determined an addition to tax under section 6661 of $1,333.75 as an alternative to the addition to tax under section 6659 shown.

The issues remaining for our consideration concern whether petitioner is liable for additions to tax under section 6653(a)[1] for 1980; under section 6653(a)(1) and (2) for 1981, 1982, and 1983; and for increased interest under section 6621(c) for 1980, 1981, 1982, and 1983. In an amendment to answer, respondent alleged that petitioner was liable for an addition to tax under section 6661 for 1982. That addition to tax remains in controversy. The parties stipulated that the facts and conclusions in the opinion rendered in Schillinger v.

---

[1] All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

Commissioner, T.C. Memo. 1990-640, affd. 1 F.3d 954 (9th Cir. 1993), control as to the income tax deficiencies. In the aforementioned case it was decided that the taxpayer's energy device had a fair market value not in excess of $1,000 (the alleged purchase price was $80,000) and that the taxpayer was not entitled to deductions and credits because his object was "solely to gain a significant tax advantage and not to earn an economic profit." Petitioner has conceded the income tax deficiencies in this case, which are based on a disallowance of $9,100 loss from Evergreen Partnership I (Evergreen) and investment tax credit carrybacks and an investment tax credit of $4,176, $5,373, $5,335, $973 for 1980, 1981, 1982, and 1983, respectively. Additionally, respondent conceded that petitioner is not liable for additions to tax under section 6659 for the taxable years 1980, 1981, 1982, or 1983.

### FINDINGS OF FACT[2]

Petitioner resided in Veradale, Washington, at the time his petition was filed in this case. After high school, petitioner served 4 years in the U.S. Marine Corps until September of 1955, when he began college. His major was in physical education. Petitioner obtained a degree in 1959 and a master's degree in 1961. From 1961 through the time of trial, petitioner taught

---

[2] The parties' stipulation of facts, along with stipulated documents, are incorporated by this reference.

mathematics, biology, health, physical education, and was also involved in coaching at the secondary school and college levels.

Petitioner and George Chalich (Mr. Chalich) were friends who had met in high school, played high school football together, and, for a time, were teachers at the same school. After Mr. Chalich retired from teaching, he solicited petitioner's interest in certain tax-sheltered annuities and investment opportunities. Mr. Chalich sold investments for Professional Investors Group, Inc. (Professional), a Washington corporation. Mr. Chalich asked petitioner if he knew of any other teachers who were interested in investing. Ultimately, petitioner and another friend and teacher, Bill Pecha (Mr. Pecha) talked to Mr. Chalich about investing. Mr. Pecha, whose educational background was in chemistry, and petitioner worked together in a college wrestling program.

Petitioner and Mr. Pecha discussed, with Mr. Chalich, investment in an energy saving device through a promotion of Saxon Energy Investment (Saxon). Petitioner had also discussed other possible investments with Mr. Chalich, including one involving stamps (Philatelic) and another involving electrical pain management (Xylocain). Petitioner was interested in energy-related investments because of increases in gasoline prices, the effects of an oil embargo, and because sources of energy were becoming more limited. Petitioner discussed with Mr. Pecha the possibility of investing in Saxon, which was being offered or

promoted by Professional and Mr. Chalich. Petitioner, to some extent, relied on Mr. Pecha's background in chemistry in considering whether to become involved in Saxon.

Petitioner attended about six meetings or discussions conducted by Professional prior to investing in Saxon. Professional advised petitioner that he could be at risk without signing a note and that his investment in the energy device held through the Evergreen partnership, would be funded by the refund of prior years' income taxes generated by the carryback of investment tax credits. Petitioner was also advised that his involvement in Evergreen would result in reductions of his current (1983) and future years' tax liabilities. Petitioner also understood that he could retain any tax savings generated through his investment. Petitioner stated that he was interested in the investment for retirement purposes and that his primary motivation was not the tax benefits, but his actions belie that statement.

Petitioner was aware that Evergreen was to lease the energy device, but after investing and claiming the tax benefits, he made no effort to inquire whether the energy device had been leased. Petitioner was aware that, in addition to the initial lease payment of about $12,700, the partnership and/or partners were not obligated to make any payments unless the device was leased to a user. Petitioner believed that his 16.667-percent interest in Evergreen (which held an interest in the energy

device) was worth about $64,000 to $76,000. Petitioner's claim for a refund reflects a cost basis of $990,000 for the energy device, so that petitioner's 16.667-percent share of the cost would have been $165,003. Petitioner did not physically examine the energy device or determine whether the value or price was appropriate. Mr. Chalich also acquired a 17.244-percent interest in Evergreen.

At the time of making the investment in Evergreen, petitioner earned about $28,000 from his teaching, and his net worth was less than $100,000. Petitioner had some investment experience by means of involvement in an investment club through which shares of stock had been acquired. Prior to investing, petitioner did not make any specific inquiries concerning the energy device or its use. Petitioner generally discussed heating costs with the school custodian where he worked. Other than people connected with Professional, petitioner did not consult with anyone specifically qualified with respect to the technology underlying the energy device or tax ramifications concerning the investment. Prior to investing in Evergreen, petitioner did not consult with attorneys or accountants in connection with income tax matters, including the preparation of his income tax return.

Petitioner and his former wife (Sally Upchurch) went to Dave Shriver (Mr. Shriver), an accountant, to discuss whether the investment in the energy device transaction packaged by Saxon was a viable investment and whether the tax aspects were proper.

Petitioner states that the accountant assured petitioner that it was a proper investment. Mr. Shriver, however, was connected with Mr. Chalich and was a part of the Professional organization, and he was referred to in Professional's advertising or promotional brochure. Professional earned commissions or income on the sale of shelter investments to its clients. In order to invest, petitioner and Sally Upchurch borrowed $14,000 secured by a second mortgage on their residence. The loan, however, was at least $3,000 less than the refunds and/or tax reductions generated by the energy-device transaction.

Petitioner and Sally Upchurch entered into an agreement with Professional on June 8, 1983. For a $1,500 fee, Professional was to assist petitioner in developing a financial plan, which included consultation on ways to increase capital. In addition, Professional was to provide a 1-hour conference with a lawyer and another with an accountant. There is no indication whether the fee was paid or the services performed, other than the consultations with Mr. Shriver, the accountant.

Petitioner and Sally Upchurch acquired a 16.667-percent interest in Evergreen, which, in turn, was to hold an interest in an energy-saving device. Petitioner's understanding of the transaction was that an interest in the energy device would be purchased by the investors, through Evergreen, which would lease the device to a user who would save on energy. He did not expect a profit in the early years of the energy device's operation

because the revenue from the expected energy savings would be utilized to make lease payments.  He expected to recoup his investment by means of the tax benefits.

Petitioner was married to Sally Upchurch from 1961 to 1985, when they were divorced.  Petitioner filed joint returns for 1980, 1981, and 1982 with Sally Upchurch, who had prepared the returns.  Their 1983 Federal income tax return and claim for refund of 3 prior years' taxes were prepared by Mr. Shriver, and after claiming the pass-through deduction and credits from Evergreen, petitioner, and Sally Upchurch received refunds and tax reductions which exceeded his out-of-pocket expenditure by about $3,000.

After the investment in Evergreen and the receipt of the tax benefits, including the refunds, petitioner did not pursue or keep track of his investment in the partnership or the energy device or its operation.  Petitioner thought that Mr. Chalich and others from Professional had attempted to contact Saxon Energy in New York City.  Ultimately, petitioner agreed with respondent that he was not entitled to the investment tax credits and deductions purportedly generated by investment in the energy device.

## OPINION

Petitioner concedes that he is liable for the underlying income tax deficiencies, but contends that he is not liable for the additions to tax and increased interest.  In that regard,

petitioner bears the burden of proof with respect to the additions to tax under section 6653(a) and the increased interest under section 6621(c).  Rule 142(a); Luman v. Commissioner, 79 T.C. 846, 860-861 (1982).  Respondent raised the section 6661 addition to tax by affirmative allegation in the answer and, accordingly, bears the burden of proof with respect to that item. Rule 142(a); Vecchio v. Commissioner, 103 T.C. 170, 196 (1994).

For 1980, section 6653(a), and for the 1981 through 1983 tax years, section 6653(a)(1) impose an addition to tax equal to 5 percent of the underpayment if any part of an underpayment of tax is due to negligence or intentional disregard of rules or regulations.  Section 6653(a)(2) for 1981, 1982, and 1983 imposes an addition to tax equal to 50 percent of the interest payable with respect to the portion of the underpayment attributable to negligence or intentional disregard of rules or regulations.

Negligence is defined as the failure to exercise the due care that a reasonable and ordinarily prudent person would employ under the circumstances.  Neely v. Commissioner, 85 T.C. 934, 947 (1985).  The question is whether a particular taxpayer's actions in connection with the transactions were reasonable in light of his experience and the nature of the investment or business.  See Henry Schwartz Corp. v. Commissioner, 60 T.C. 728, 740 (1973). When considering the negligence addition to tax, we evaluate the particular facts of each case, judging the relative sophistication of the taxpayers, as well as the manner in which

they approached their investment.  McPike v. Commissioner, T.C. Memo. 1996-46.

A taxpayer may avoid liability for the additions to tax under section 6653(a)(1) and (2) by relying on competent professional advice, if it was reasonable to rely on such advice. United States v. Boyle, 469 U.S. 241, 250-251 (1985); Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011, 1017 (5th Cir. 1990), affd. 501 U.S. 868 (1991).  Reliance on professional advice, standing alone, is not an absolute defense to negligence, but rather a factor to be considered.  In order for reliance on professional advice to excuse a taxpayer from the additions to tax for negligence, the taxpayer must show that such professional had the expertise and knowledge of the pertinent facts to provide valuable and dependable advice on the subject matter.  Goldman v. Commissioner, 39 F.3d 402, 408 (2d Cir. 1994), affg. T.C. Memo. 1993-480; Freytag v. Commissioner, supra; Kozlowski v. Commissioner, T.C. Memo. 1993-430, affd. without published opinion 70 F.3d 1279 (9th Cir. 1995).

Reliance on representations by insiders, promoters, or offering materials has been held an inadequate defense to negligence.  Goldman v. Commissioner, supra; Pasternak v. Commissioner, 990 F.2d 893, 903 (6th Cir. 1993), affg. Donahue v. Commissioner, T.C. Memo. 1991-181; LaVerne v. Commissioner, 94 T.C. 637, 652-653 (1990), affd. without published opinion 956 F.2d 274 (9th Cir. 1992), affd. without published opinion sub

nom. Cowles v. Commissioner, 949 F.2d 401 (10th Cir. 1991); Marine v. Commissioner, 92 T.C. 958, 992-993 (1989), affd. without published opinion 921 F.2d 280 (9th Cir. 1991); McCrary v. Commissioner, 92 T.C. 827, 850 (1989); Rybak v. Commissioner, 91 T.C. 524, 565 (1988). Reliance has also been rejected when neither the taxpayer nor the advisers relied upon had knowledge about the nontax business aspects of the contemplated venture. Goldman v. Commissioner, supra; Freytag v. Commissioner, supra; Beck v. Commissioner, 85 T.C. 557 (1985); Lax v. Commissioner, T.C. Memo. 1994-329, affd. without published opinion 72 F.3d 123 (3d Cir. 1995); Steerman v. Commissioner, T.C. Memo. 1993-447; Rogers v. Commissioner, T.C. Memo. 1990-619.

Petitioner argues that his investment approach was reasonably prudent for a person of his sophistication and circumstances. He describes himself as a person with a modest net worth and no background or experience in tax matters. Petitioner also explained that, at 50 years old, he was unsophisticated and had not consulted an accountant or an attorney up until his involvement in the energy device. He also notes that his ex-wife prepared their 1980, 1981, and 1982 returns and that he relied on an accountant or his advisers in the particulars of deciding whether to invest, the bona fides of the investment, and the manner in which the transaction should be reported to respondent.

Conversely, respondent argues that petitioner is college-educated and without experience in energy devices. Based on that premise, respondent argues that petitioner's failure to inquire about comparable costs of energy devices, obtain independent appraisals, or seek the review of the promotional offering materials by anyone other than the promoters and individuals connected with the promoters, was not reasonable under the circumstances.

Petitioner, in arguing that his reliance on advisers was reasonable, relies, in particular, on the following three opinions: Wentz v. Commissioner, 105 T.C. 1 (1995); Chamberlain v. Commissioner, 66 F.3d 729 (5th Cir. 1995), affg. in part and revg. in part T.C. Memo. 1994-228; and Norgaard v. Commissioner, 939 F.2d 874 (9th Cir. 1991), affg. in part and revg. in part T.C. Memo. 1989-390. In Wentz v. Commissioner, supra at 15, reliance on advisers was not a factor, and we held that the taxpayers' legal position, although rejected by the Court, was "reasonable under the circumstances". In that connection, petitioner does not argue that his reporting position was reasonable. Instead, petitioner has conceded that he is liable for the income tax deficiency in each year.

In Chamberlain v. Commissioner, supra at 732-733, the Court of Appeals for the Fifth Circuit expressed the following standard for reliance on professional advice:

> The reliance must be objectively reasonable; taxpayers may not rely on someone with an inherent conflict of interest, or someone with no knowledge concerning that matter upon which the advice is given. In this regard, the Supreme Court noted that "when an accountant or attorney *advises* a taxpayer on a matter of tax law, such as whether liability exists, it is reasonable for the taxpayer to rely on that advice." [Fn. refs. omitted.]

The Court of Appeals, in a footnote, made the comment that the Chamberlain case "demonstrates that one may enter into a transaction without a profit motive but not be negligent in claiming a tax loss if that claim is in reasonable reliance on the advice of a tax expert." Id. at 733 n.23.

Respondent contends that the Chamberlain holding is distinguishable from petitioner's situation. The tax or professional adviser in Chamberlain was an accountant unaffiliated with the investment promoters or sellers and, therefore, did not have a conflict of interest. See Chamberlain v. Commissioner, T.C. Memo. 1994-228.

Finally, in Norgaard v. Commissioner, supra at 880, the Court of Appeals for the Ninth Circuit found that the taxpayers' method of accounting for gambling losses met the standard of due care or "what a reasonable and prudent person would do" and consequently that they were not negligent. Respondent contends that Norgaard is distinguishable because the deductions in that case would have been allowable if substantiated. Here, petitioner must show that he met the standard of care that the Court of Appeals for the Ninth Circuit found was met in Norgaard.

In other words, the taxpayers in Norgaard met their burden by convincing the Court that their accounting system was reasonable under the circumstances, and petitioner must show that his approach here was, in a like manner, reasonable.

Petitioner has conceded the income tax deficiencies, agreeing that the facts and conclusions of Schillinger v. Commissioner, T.C. Memo. 1990-640, control that aspect of the case. In Schillinger, we found that the energy device which the taxpayers claimed had a cost of $80,000 in fact had a fair market value of $1,000. In addition, we found that the taxpayer in Schillinger invested in the energy-device leasing program solely to gain a tax advantage and not to earn an economic profit.

Here, petitioner claims to have invested for retirement purposes and that his primary motivation was not the related tax benefits. Petitioner's actions, however, do not support his claim. Petitioner, during his trial testimony, exhibited an understanding of the details and operation of the energy-device leasing transaction. He understood that he had no obligations beyond the front-end payment of the amount of his investment and consulting fees of Professional. Moreover, petitioner knew that the cost of his investment would be funded by the refund of taxes already paid. In this regard, petitioner netted and received more than $3,000 in excess of his expenditure to become involved in the transaction.

Petitioner characterized himself as a person of modest means at the time of his involvement in the transaction.  He earned about $28,000 annually from teaching, and his net worth was less than $100,000.  Although petitioner attended several meetings prior to investing, after the investment and receipt, in cash, of the tax benefits, he did nothing to determine the status of his investment.  Petitioner did not personally observe the energy device, of which he thought his share of the cost approximated $70,000.[3]  Additionally, he did not ascertain whether any energy device had actually been leased.  In this regard, it was petitioner's understanding that lease payments would be made from the lessee's energy savings.

As a matter of perspective, we find it difficult to believe that petitioner was expecting the energy device or his partnership investment to provide an income stream or residual value for retirement or any other purpose.  A reasonable person with a $100,000 net worth and $28,000 salary, who was buying a 16-percent interest in an energy device allegedly worth almost $1 million, could be expected to have more than a detached interest in seeing the device and/or verifying its value or the eventual outcome of its proposed energy savings.  This is especially so

---

[3] Although he testified to a value for his interest of about $70,000, petitioner's claim for a refund reflects that he was claiming an investment credit based on $165,003 value, which represents his 16.667-percent interest in Evergreen and the energy device.  Accordingly, the energy device had a purported cost of $990,000.

for a well-educated person like petitioner, who had not been significantly involved in businesses or investments prior to that time. A reasonable person in these circumstances would be more concerned about the bona fides of the transaction. Once petitioner was at least $3,000 ahead from the refund of his 1980, 1981, and 1982 taxes and reductions in 1983 tax, he lacked interest in the transaction and its ultimate outcome. This reflects that petitioner's primary, if not sole, motivation for involvement in the transaction was the tax benefit received on the front end, rather than an interest in income or retirement income sources.

Petitioner contends that he reasonably relied on his friend, Mr. Chalich (the salesman and coinvestor); his coworker, Mr. Pecha (the chemistry teacher and coinvestor); and Mr. Shriver (the accountant connected with the promoter/sales organization). There is no allegation that Mr. Chalich had any expertise in energy devices or the economics of the transaction in question. Other than their long-term friendship, which has no bearing on this issue, petitioner has not shown that it was reasonable to rely on Mr. Chalich.

Concerning Mr. Pecha, he was a chemistry teacher and involved in a wrestling program with petitioner. In addition, Mr. Pecha also invested in the same Saxon energy-device leasing transaction as petitioner. Although petitioner relied on Mr. Pecha's educational and teaching background with respect to the

technical aspects of the energy-device transaction, such reliance, considering petitioner's background and experience, did not rise to the level of the duty of care standard that would be reasonable in these circumstances. Petitioner has not shown that Mr. Pecha, other than his background in chemistry, had any specialized knowledge or technical qualifications necessary to assess the effectiveness or economics of the energy device in question. There is no indication that Mr. Pecha ever personally observed the device or that he had conducted independent research concerning it. Considering petitioner's level of education and his limited understanding of the mechanics of the transaction, his reliance on Mr. Pecha was not reasonable.

Petitioner also claims that the accountant, Mr. Shriver, assured him that the energy-device transaction was a proper investment. In this regard, petitioner also contends that Mr. Shriver was an independent certified public accountant, so as not to be connected with the promoters or to have a financial interest in the sale of the investment. Petitioner's claim of Mr. Shriver's independence is not supported in the record. To the contrary, Professional's (a self-proclaimed promoter or seller of tax shelters) brochure contains the following statement about Mr. Shriver:

> We arrange for a qualified tax specialist to be available for consultation and to provide accounting services to whatever extent you may need. By appointment, an initial hour of time with David Shriver, C.P.A.,is provided with your financial plan.

> Should you elect to schedule more time with Mr. Shriver, he will discuss a fee schedule for the services to be rendered.

Petitioner entered into a $1,500 agreement with Professional for service, which included 1 hour with a "certified public accountant", whom we must assume is Mr. Shriver. Petitioner has failed to show Mr. Shriver's independence from the organization that, at the very least, benefits from the sale of the investment opportunity on which Mr. Shriver opined. Considering established precedent and the specific circumstances of this case, it was not reasonable for petitioner to rely on the individuals in question.

Petitioner had a clear basic understanding of the dynamics and magnitude of this energy-device transaction. He was aware that his tax benefits and any potential for income stemmed from the lease of a device whose purported cost, relative to his net worth and income, was substantial. His focus was primarily, if not solely on the tax benefits. Petitioner would have otherwise been concerned about the bona fides of the transaction. If petitioner was interested in income (retirement or otherwise) he would, at the very least, want to know whether such an energy device existed, operated, was leased and had value equivalent to the claims on which his reported credits and deductions were based.

Accordingly, it was not reasonable for him to ignore the bona fides of the transaction or to rely on persons who were without specialized knowledge or who had a financial interest in

or direct connection to the sale of the tax-shelter product. Therefore, petitioner is liable for the additions to tax for negligence for 1980 under section 6653(a) and for 1981, 1982, and 1983 under section 6653(a)(1) and (2).

Respondent, in an amendment to the answer, alleged in the alternative, if petitioner was not found liable for an addition to tax under section 6659 for the 1982 taxable year, that petitioner should be found liable for an addition under section 6661. Section 6661 provides for a 25-percent addition if there is a substantial understatement. An understatement is substantial when it exceeds the greater of $5,000 or 10 percent of the amount of tax required to be shown on the return. Sec. 6661(b)(1)(A). Respondent points out that the income tax deficiency for 1982 resulting from petitioner's investment in Evergreen exceeded $5,000 and that petitioner has conceded that he is liable for that portion of the deficiency.

Section 6661(b)(2)(B)(i) and (ii) provides for reductions in the understatement to the extent that there was adequate disclosure or substantial authority. In the case of a tax shelter, however, the adequate disclosure exception does not apply, and in addition to having substantial authority, a taxpayer must have reasonably believed it to be more likely than not that the tax treatment was proper. Sec. 6661(b)(2)(C)(i)(I) and (II).

Respondent bears the burden of proof because the section 6661 addition to tax was first raised in respondent's answer, rather than in the notice of deficiency. Rule 142(a). Respondent contends that the record reflects the following facts that satisfy her burden: (1) Petitioner knew that he would receive tax benefits $3,000 over his total cash investment; (2) petitioner conducted virtually no independent investigation or evaluation of the promoter's (or its associates' or agents') expertise or of the economic viability of the energy device; (3) after investing, no inquiry was made as to whether an energy device had been placed in service, even though deductions and credits were claimed. In summary, respondent contends that the record reflects that petitioner was motivated by tax benefits rather than economic profit. Respondent also notes that other taxpayers with the same or substantially similar investments in energy devices have been found by this Court to have lacked substantial authority for the treatment of the tax shelter items, citing Schillinger v. Commissioner, T.C. Memo. 1990-640.

Petitioner argues that he relied on persons whom he believed to be more knowledgeable and that such reliance was reasonable. Petitioner references four court opinions which he believes support his position that section 6661 should not be applied here. Durrett v. Commissioner, 71 F.3d 515 (5th Cir. 1996), affg. in part and revg. in part T.C. Memo. 1994-179; Vorsheck v. Commissioner, 933 F.2d 757 (9th Cir. 1991); Heasley v.

Commissioner, 902 F.2d 380 (5th Cir. 1990), revg. T.C. Memo. 1988-408; and Rosenthal v. Commissioner, T.C. Memo. 1995-603.

Section 1.6661-6(b), Income Tax Regs., provides that:

> Reliance on * * * the advice of a professional (such as an appraiser, an attorney, or an accountant) would not necessarily constitute a showing of reasonable cause and good faith. * * * Reliance on * * * professional advice * * *, however, would constitute a showing of reasonable cause and good faith if, under all the circumstances, such reliance was reasonable and the taxpayer acted in good faith. * * *

It is evident from the record that petitioner did not have substantial authority, and, because of the nature of the transaction (tax shelter), he is not entitled to rely on adequate disclosure to reduce any substantial understatement. Accordingly, we address whether petitioner's reliance was "reasonable" and in "good faith." The cases[4] cited by petitioner apply the same standard as set forth in section 1.6661-6(b), Income Tax Regs. In each of the cases, it appears that the taxpayers relied on the advice of a tax professional who was independent and had previously assisted the taxpayer, prior to the time in question, in the acquisition and/or reporting of transactions for investment and/or tax purposes.

For purposes of reporting Federal income taxes, petitioner had not relied on accountants or lawyers prior to his involvement

---

[4] It is noted that Durrett v. Commissioner, 71 F.3d 515 (5th Cir. 1996), affg. in part and revg. in part T.C. Memo. 1994-179, involves whether good faith reliance on tax professionals is a "defense" to sec. 6621(c) and does not specifically concern a substantial understatement under sec. 6661.

with Professional and Evergreen. His reliance in this setting was not reasonable and/or in good faith. Petitioner had no prior experience with Mr. Shriver, who was connected with the promoter/seller of the investment. In a similar manner, petitioner's friend, Mr. Chalich, was not qualified regarding the technical aspects or physical properties of the investment. In addition, as a salesman for Professional, he was not independent. As noted in the discussion concerning the addition to tax for negligence, it was not reasonable for petitioner to rely on Professional and its agents and associates because they earned fees in connection with the sale of the tax shelters. Furthermore, the individuals petitioner relied upon lacked not only independence, but also any specific expertise concerning the subject matter of petitioner's investment vehicle.

We again note that petitioner, a college graduate with an advanced degree, was knowledgeable about the manner in which the transaction was to operate and that he would receive cash $3,000 greater than his out-of-pocket investment. Also, petitioner was aware that the energy device was to be leased and that it had a substantial value. Even though he stated that he was relying on the investment for his retirement, he took no actions to determine if the device existed, was in use, or had value. After he received his $3,000 plus return, he did virtually nothing that would have supported the assertions he made in this case.

Accordingly, the record supports respondent's assertion that a substantial understatement under section 6661 exists with respect to petitioner's 1982 taxable year.

Respondent also determined that petitioner was liable for increased interest under section 6621(c) for each of the taxable years 1980, 1981, 1982, and 1983. The increased interest equals 120 percent of the interest payable under section 6601 with respect to any substantial underpayment attributable to a tax-motivated transaction. An underpayment is substantial if it exceeds $1,000. Sec. 6621(c)(2). A "tax motivated transaction" includes, among other categories, valuation overstatements within the meaning of section 6659 and any sham or fraudulent transaction. See sec. 6621(c)(3)(A)(i) and (v). Respondent has conceded that section 6659 is not applicable in this case. Accordingly, we consider whether the energy-device transaction was a "sham or fraudulent".

Transactions that lack economic substance or a profit motive are sham transactions under section 6621(c). See, e.g., Cherin v. Commissioner, 89 T.C. 986, 1000 (1987); sec. 301.6621-2T Q&A-4, Temporary Proced. & Admin. Regs., 49 Fed. Reg. 50392 (Dec. 28, 1984). Respondent argues that the facts here support a holding that petitioner's energy-device transaction was a tax motivated transaction within the meaning of section 6621(c). As with the prior issues, petitioner argues that he did not expect to make an immediate profit, but that he expected retirement income from the

transaction.  For the reasons already expressed herein, petitioner's motivation for investment in the energy device was to obtain the tax benefits, and his actions do not support his claim that he intended or expected to earn profits upon retirement or otherwise.  Accordingly, we hold that petitioner is liable for the increased interest in each tax year.

To reflect the foregoing and due to concessions,

<u>Decision will be entered</u>

<u>under Rule 155.</u>