T.C. Memo. 2001-17

UNITED STATES TAX COURT

JOHN Y. & MARION ROBNETT, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8561-99.                    Filed January 26, 2001.

Hugh O. Mussina, for petitioners.

Rodney J. Bartlett, for respondent.

MEMORANDUM OPINION

DINAN, Special Trial Judge:  Respondent determined that
petitioner was liable for the following additions to tax for
taxable year 1982:  $1,070 under section 6653(a)(1), 50 percent
of the interest due on a $21,404 deficiency under section
6653(a)(2), and $5,351 under section 6661.  Unless otherwise
indicated, section references are to the Internal Revenue Code in

effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The issues for decision are: (1) Whether petitioners are liable for additions to tax for negligence under section 6653(a); (2) whether petitioners are liable for the addition to tax for a substantial understatement under section 6661; (3) whether this Court has jurisdiction to review the section 6621(c) tax-motivated interest assessed by respondent and remaining unpaid by petitioners; and (4) if this Court does have jurisdiction to review the tax-motivated interest, whether such interest was properly assessed in this case.[1] The issues in this case concern an investment in Yuma Mesa Jojoba, Ltd. ("Yuma Mesa" or "the partnership").[2]

---

[1]In their petition, petitioners raised the additional issues of the possible applicability of sec. 6404(g), regarding suspension of interest and penalties, and the possible applicability of the statute of limitations under sec. 6229(f). Petitioners, however, did not include these issues in either their trial memorandum or their posttrial brief. We therefore consider them to have been abandoned.

[2]The underlying deficiency in this case is based upon a computational adjustment made by respondent in accordance with partnership level adjustments. Those adjustments were upheld by this Court in Cactus Wren Jojoba, Ltd. v. Commissioner, T.C. Memo. 1997-504. In that case, this Court reviewed respondent's determinations with respect to Yuma Mesa and a related partnership. We held that the partnerships did not directly or indirectly engage in research or experimentation and that the partnerships lacked a realistic prospect of entering into a trade or business. In upholding respondent's disallowance of $1,298,031 in research and experimental expenditures claimed by Yuma Mesa, we described the research and development agreement
(continued...)

Some of the facts have been stipulated and are so found. The stipulations of fact and the attached exhibits are incorporated herein by this reference. Petitioners resided in Dallas, Texas, on the date the petition was filed in this case.

In 1982 and at the time of trial, petitioner husband (Mr. Robnett) was practicing as a dentist. He operated his practice as a corporation and supervised two other employees. Petitioner wife (Ms. Robnett) assisted her husband in his office on a part-time basis in 1982 and worked as a receptionist in her husband's office at the time of trial. Mr. Robnett spent 4 years in undergraduate education and 3 years earning his dentistry degree. Ms. Robnett received a 4-year degree in elementary education and spent 5 years teaching.

Although Ms. Robnett knew of the existence of jojoba and some of its uses prior to the investment, she first learned of the jojoba investment opportunity from petitioners' accountant, Mr. Ray Meinke. Mr. Meinke prepared petitioners' tax return for 1982 and had been preparing their returns since 1958, the year in which petitioners were married. He suggested to petitioners that they invest in Yuma Mesa as a means to set aside money for

---

[2](...continued)
entered into by the partnership as "mere window dressing, designed and entered into solely to decrease the cost of participation in the jojoba farming venture for the limited partners through the mechanism of a large upfront deduction for expenditures that in actuality were capital contributions." Id.

retirement.  Mr. Meinke handled the sale of the partnership interests.

Ms. Robnett did not investigate Mr. Meinke's experience, or lack thereof, in agricultural investments and/or research and development.  Neither did she investigate the partnership's investment prospects--apart from the uses of jojoba--before petitioners made the investment.  She did not conduct cash-flow analyses or evaluate potential jojoba markets.  She did not independently research other commercial jojoba plantations.  She never traveled to the plantation to investigate the progress which had been made.

According to the private placement memorandum distributed by the promoters of Yuma Mesa, the partnership was organized "to engage in research and development and, thereafter, participate in the marketing of the products of the jojoba plant."  Interests in the partnership were offered for $12,245 each, payable by cash of $3,571 and a 4-year promissory note of $8,674 bearing 10 percent annual interest.

Yuma Mesa was organized as a limited partnership with two cogeneral partners.  The general partners, G. Dennis Sullivan and William Woodburn, were lawyers; the private placement memorandum listed no experience of either outside the legal field.  Yuma Mesa was to enter into a "Research and Development Agreement" with Hilltop Plantations, Inc. (Hilltop), which would in turn

enter into a farming subcontract with its wholly owned subsidiary, Mesa Plantations, Inc. (Mesa).  Hilltop was then to enter into an "Experimental Agricultural Lease" with Hilltop Ventures, a general partnership with identical ownership as Hilltop.  This lease was to be assigned to Mesa upon completion of the research and development.  Finally, Hilltop was to enter into a "Research and Development Management Agreement" with Agricultural Investments, Inc., which was to be the "manager" of the project.

Hilltop (as well as Mesa and Hilltop Ventures) was controlled by four individuals.  These individuals were Mr. Meinke (president, director, and shareholder), Keith A. Damer (vice president, secretary, director, and shareholder), Marlin G. Peterson (vice president, treasurer, director, and shareholder), and Cecil R. Almand (shareholder).  The three officer/directors of Hilltop were all listed as certified public accountants with expertise in the tax field.  The private placement memorandum listed no experience of any of the officer/directors or shareholders which is relevant to the farming of jojoba.

The private placement memorandum contained language specifically alerting investors to the planned deduction of the "research and development" costs, as well as other tax risks involved in making an investment in the partnership.  The document also contained an opinion letter stating that the

research and development agreement contained therein met the requirements of section 174.  A copy of this document was distributed to Mr. Robnett.  Potential investors were required to provide information concerning any previous experience in tax shelter investments, and the subscription agreement required investors to initial a statement that the investor had been advised to consult with an attorney concerning the tax consequences of the investment.

Mr. Robnett executed the subscription agreement and purchased six interests in Yuma Mesa in late 1982.  In connection with this purchase, he executed a promissory note and made a cash payment.  Mr. Robnett was issued a Schedule K-1 by the partnership which allocated a $69,521 ordinary loss for taxable year 1982 to Mr. Robnett.

Ms. Robnett received no information concerning the partnership for several years after the investment.  In the late 1980's, she learned that respondent had challenged the partnership's tax treatment of the purported research and development costs.  Petitioners never paid the promissory note signed in connection with the investment in Yuma Mesa.

On petitioners' joint Federal income tax return for taxable year 1982, they reported $85,378.90 in compensation from Mr. Robnett's corporation.  From this they subtracted a $66,465 loss as reported on Schedule E, Supplemental Income and Loss.  On the

Schedule E, they reported Mr. Robnett's $69,521 distributive share of Yuma Mesa's loss, an $80 loss from another partnership, and $3,200 of income from a third partnership. They also reported on the return $2,538 in investment expenses and $13,196 in investment interest expenses.

After examining Yuma Mesa's partnership return for taxable year 1982, respondent disallowed the $1,298,031 deduction claimed as research and development costs and increased the partnership's income by a total of $1,307,781. Respondent's determinations were upheld in their entirety by this Court. Respondent subsequently determined that petitioners' portion of the partnership level adjustment resulted in a $21,404 deficiency. Respondent issued petitioners a statutory notice of deficiency determining additions to tax under sections 6653(a)(1), 6653(a)(2), and 6661, in the respective amounts of $1,070, 50 percent of the interest due on a $21,404 deficiency, and $5,351.

The first issue for decision is whether petitioners are liable for additions to tax for negligence under section 6653(a)(1) and (2). Section 6653(a)(1) imposes an addition to tax equal to 5 percent of the underpayment of tax if any part of the underpayment is attributable to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) provides for a further addition to tax equal to 50 percent of the interest

due on the portion of the underpayment attributable to negligence or intentional disregard of rules and regulations.

Negligence includes "any failure to reasonably attempt to comply with the tax code, including the lack of due care or the failure to do what a reasonable or ordinarily prudent person would do under the circumstances." Chamberlain v. Commissioner, 66 F.3d 729, 732 (5th Cir. 1995), affg. in part and revg. in part T.C. Memo. 1994-228. Generally, courts look both to the underlying investment and to the taxpayer's position taken on the return in evaluating whether a taxpayer was negligent. See Sacks v. Commissioner, 82 F.3d 918, 920 (9th Cir. 1996), affg. T.C. Memo. 1994-217. However, the Court of Appeals for the Fifth Circuit, to which appeal lies in this case, has held that the proper inquiry in negligence cases is whether the taxpayer was reasonable in claiming the loss. See Reser v. Commissioner, 112 F.3d 1258, 1271 (5th Cir. 1997), affg. in part and revg. in part T.C. Memo. 1995-572; Durrett v. Commissioner, 71 F.3d 515, 518 (5th Cir. 1996), affg. in part and revg. in part T.C. Memo. 1994-179; Chamberlain v. Commissioner, supra at 733. We therefore focus on the reasonableness of petitioners' claiming the loss on their return.

Petitioners argue that they were not negligent because they relied on the advice of a professional, Mr. Meinke, in claiming the loss. Good faith reliance on professional advice concerning

tax laws is a defense to the negligence penalties.  See

Chamberlain v. Commissioner, supra at 732.  The advice must be

objectively reasonable and must not be from one with an inherent

conflict of interest or from one with no knowledge concerning the

matter upon which the advice is given.  See id.

There is little evidence in the record supporting

petitioners' argument that they were not negligent.  There is no

testimony in the record from the person primarily involved with

the investment, Mr. Robnett.  Although Ms. Robnett testified that

she--not her husband--was primarily involved in the Yuma Mesa

investment, the stipulations of the parties and the evidence show

otherwise.  The parties stipulated that it was Mr. Robnett who

acquired the interests in the partnership, executed the

subscription agreement, executed the promissory note, and

remitted the cash payment.  The evidence in the record supports

these stipulations:  The Schedule K-1 issued by the partnership

was issued solely to Mr. Robnett.  There is also no testimony in

the record from Mr. Meinke, the person upon whom petitioners are

claiming reliance and basing their argument that they are not

negligent.  The explanations offered for the absence of testimony

from Mr. Robnett and Mr. Meinke were not satisfactory, and in the

absence of the testimony we assume that their testimony would not

have been favorable to petitioners.  See Mecom v. Commissioner,

101 T.C. 374, 386 (1993), affd. 40 F.3d 385 (5th Cir. 1994).

Overlooking the lack of evidence, however, Mr. Meinke's advice was clearly from someone with an inherent conflict of interest and as such cannot be the basis of petitioners' defense to the negligence penalties.  See Chamberlain v. Commissioner, supra; Rybak v. Commissioner, 91 T.C. 524, 565 (1988).  Mr. Meinke was a promoter of the Yuma Mesa partnership and was a principal in the related entities.  Petitioners were aware of this conflict of interest at the time of the investment and when they claimed the loss on their return.  We find that petitioners' decision to rely upon the advice of Mr. Meinke, who had helped to establish the partnership and who convinced petitioners to make their investment, was not the action of a reasonable or ordinarily prudent person under the circumstances.

In their brief, petitioners cite Kantor v. Commissioner, 998 F.2d 1514 (9th Cir. 1993), affg. in part and revg. in part T.C. Memo. 1990-380.  In Kantor, the Court of Appeals for the Ninth Circuit held that the taxpayers were not negligent because they were not acting unreasonably in claiming a section 174 deduction for the development of computer software.  The court noted the almost complete absence of case law interpreting section 174 at the time the taxpayers claimed the deduction and stated that the taxpayers reasonably could have been led to believe by the general partner's experience and involvement with the research project that they were entitled to the deduction.  The court

further stated: "At the time appellants invested, there were few, if any, warning signs that they would not be entitled to the deduction." Id. at 1522-1523. In this case, we have held that petitioners' reliance upon Mr. Meinke's advice was not reasonable because of the inherent conflict of interest. Furthermore, there is no evidence that petitioners received advice from anyone independent of the investment, or that they conducted their own investigation into the propriety of the deduction. Petitioners may not rely upon a "lack of warning" as a defense to negligence, where there is no evidence that a reasonable investigation was ever made which would have allowed them to discover such a lack of warning.

Petitioners also cite Heasley v. Commissioner, 902 F.2d 380 (5th Cir. 1990), revg. T.C. Memo. 1988-408. The relevancy of Heasley to petitioners' situation is unclear. Unlike the taxpayers in Heasley, petitioners are not moderate-income, blue-collar investors. On the contrary, Mr. Robnett was a dentist, and both petitioners had received college degrees. Furthermore, Ms. Robnett did not read the private placement memorandum (there is no evidence that Mr. Robnett did so either), and petitioners made little or no effort to monitor their investment. Finally, petitioners were educated and had at least some level of investment experience--as indicated on their 1982 tax return; petitioners were involved with at least two other partnership

investments during 1982, and incurred $2,538 in investment expenses and $13,196 in investment interest expenses that year.

We uphold respondent's determination that petitioners are liable for the section 6653(a)(1) and (2) additions to tax for negligence.

The second issue for decision is whether petitioners are liable for the addition to tax under section 6661 for a substantial understatement of tax. Section 6661(a), as amended by the Omnibus Budget Reconciliation Act of 1986, Pub. L. 99-509, sec. 8002, 100 Stat. 1951, provides for an addition to tax of 25 percent of the amount of any underpayment attributable to a substantial understatement of income tax for the taxable year. A substantial understatement of income tax exists if the amount of the understatement exceeds the greater of 10 percent of the tax required to be shown on the return, or $5,000. See sec. 6661(b)(1)(A). Generally, the amount of an understatement is reduced by the portion of the understatement which the taxpayer shows is attributable to either (1) the tax treatment of any item for which there was substantial authority, or (2) the tax treatment of any item with respect to which the relevant facts were adequately disclosed on the return. See sec. 6661(b)(2)(B). If an understatement is attributable to a tax shelter item, however, different standards apply. First, in addition to showing the existence of substantial authority, a taxpayer must

show that he reasonably believed that the tax treatment claimed was more likely than not proper. See sec. 6661(b)(2)(C)(i)(II). Second, disclosure, whether or not adequate, will not reduce the amount of the understatement. See sec. 6661(b)(2)(C)(i)(I).

Substantial authority exists when "the weight of authorities supporting the treatment is substantial in relation to the weight of the authorities supporting contrary positions." Sec. 1.6661-3(b)(1), Income Tax Regs. Petitioners argue that no authority, other than the statute itself, existed at the time they claimed the loss. Lack of authority, however, necessarily cannot provide the substantial authority required under the statute and regulations.

Adequate disclosure may be made either in a statement attached to the return or on the return itself if in accordance with the requirements of Rev. Proc. 83-21, 1983-1 C.B. 680. See sec. 1.6661-4(b), (c), Income Tax Regs. Nothing in the record indicates petitioners attached such a statement to their 1982 return. Rev. Proc. 83-21, applicable to tax returns filed in 1983, lists information which is deemed sufficient disclosure with respect to certain items, none of which are involved in this case. If disclosure is not made in compliance with the regulations or the revenue procedure, adequate disclosure on the return may still be satisfied if sufficient information is provided to enable respondent to identify the potential

controversy involved.  See Schirmer v. Commissioner, 89 T.C. 277, 285-286 (1987).  Petitioners argue that the deduction was clearly indicated on the return.  Merely claiming the loss, without further explanation, was not sufficient to alert respondent to the controversial section 174 deduction of which the partnership loss consisted.

Finally, section 6661(c) provides the Secretary with the discretion to waive the section 6661(a) addition to tax if the taxpayer shows he acted with reasonable cause and in good faith. We review the Secretary's failure to waive the addition to tax for abuse of discretion.  See Martin Ice Cream Co. v. Commissioner, 110 T.C. 189, 235 (1998).  Petitioners argue that they acted in good faith and reasonably relied upon Mr. Meinke in claiming the loss.  However, nothing in the record indicates petitioners requested a waiver for good faith and reasonable cause under section 6661(c).  In the absence of such a request, we cannot review respondent's determination for an abuse of discretion.  See id.

Because petitioners did not have substantial authority for their treatment of the partnership loss and did not adequately disclose the relevant facts of that treatment, we uphold respondent on this issue.

The third issue for decision is whether this Court has jurisdiction to review the section 6621(c) tax-motivated interest

assessed by respondent.  Section 6621(c), formerly section 6621(d)--as in effect for taxable years for which returns were due prior to 1990, for interest accruing after 1984--provides an increased rate of interest for substantial underpayments attributable to tax-motivated transactions.  This Court generally lacks jurisdiction to redetermine interest prior to an entry of a decision redetermining a deficiency.  See sec. 7481(c) (as currently in effect); Rule 261; Pen Coal Corp. v. Commissioner, 107 T.C. 249, 255 (1996).  Furthermore, this Court generally does not have jurisdiction to review respondent's assessment of section 6621(c) tax-motivated interest in affected item proceedings, such as in the present case, even though the tax-motivated interest is an affected item which requires a partner level determination.  See White v. Commissioner, 95 T.C. 209 (1990); Greene v. Commissioner, T.C. Memo. 1995-105.  A narrow exception to this rule applies if a taxpayer has paid the assessed tax-motivated interest and subsequently invokes the overpayment jurisdiction of this Court under section 6512(b).  See Barton v. Commissioner, 97 T.C. 548 (1991).

Petitioners nevertheless argue that this Court has jurisdiction to review such assessments under section 6621(c)(4).  Section 6621(c)(4) provides as follows:

> (4) Jurisdiction of Tax Court.--In the case of any proceeding in the Tax Court for a redetermination of a deficiency, the Tax Court shall also have jurisdiction to determine the portion (if any) of such deficiency which is a

substantial underpayment attributable to tax motivated
transactions.

Respondent presumably determined that the underlying deficiency
in this case was a substantial underpayment attributable to a
tax-motivated transaction.  This Court does not have jurisdiction
to review the underlying deficiency, however, because it was a
computational adjustment made pursuant to an adjustment to a
partnership item determined in a partnership proceeding.  See
Saso v. Commissioner, 93 T.C. 730, 734 (1989).  Thus, because the
underlying deficiency is not before this Court, section
6621(c)(4) cannot confer jurisdiction on this Court to determine
what portion of such underlying deficiency is attributable to a
tax-motivated transaction.  Furthermore, although each addition
to tax at issue in this case is a "deficiency" within the meaning
of section 6621(c)(4), section 6621(c)(2) excludes additions to
tax from the definition of "substantial underpayment attributable
to tax motivated transactions," thereby precluding review under
section 6621(c)(4).  White v. Commissioner, supra at 216.

Petitioners further argue that this court has jurisdiction
over this matter because the amount assessed by respondent under
the authority of section 6621(c) is a penalty, not interest.
Tax-motivated interest is clearly interest, prescribed in the
same manner as all interest--under section 6601(a), at the rate
set forth in section 6621.  Even if the interest could be
considered a "penalty", it is nonetheless prescribed by section

6601(a) and therefore subject to the same jurisdictional restrictions as regular interest prescribed by section 6601(a). See Pen Coal Corp. v. Commissioner, supra at 255.

Because the record does not indicate that petitioners have paid the section 6621(c) tax-motivated interest assessed by respondent, this Court does not have jurisdiction to review its assessment. Based upon this holding, we do not reach the issue of whether such interest was properly assessed in this case.

To reflect the foregoing,

Decision will be entered

for respondent.