T.C. Memo. 2001-15

UNITED STATES TAX COURT

JACKIE H. HUNT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5060-99.                    Filed January 25, 2001.

<u>Hugh O. Mussina</u>, for petitioner.

<u>Rodney J. Bartlett</u>, for respondent.

MEMORANDUM OPINION

DINAN, <u>Special Trial Judge</u>:  Respondent determined that
petitioner was liable for the following additions to tax for
taxable year 1982:  $579 under section 6653(a)(1); 50 percent of
the interest due on an $11,587 deficiency under section
6653(a)(2); and $2,897 under section 6661.  Unless otherwise
indicated, section references are to the Internal Revenue Code in

effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The issues for decision are: (1) Whether petitioner is liable for additions to tax for negligence under section 6653(a); (2) whether petitioner is liable for the addition to tax for a substantial understatement under section 6661; (3) whether this Court has jurisdiction to review the section 6621(c) tax-motivated interest assessed by respondent and remaining unpaid by petitioner; and (4) if this Court does have jurisdiction to review the tax-motivated interest, whether such interest was properly assessed in this case.[1] The issues in this case concern petitioner's participation as a limited partner in Yuma Mesa Jojoba, Ltd. (Yuma Mesa or the partnership).[2]

---

[1]In her petition, as twice amended, petitioner raised the additional issues of (1) alleged errors by respondent in determining the correct amount of interest; (2) the possible applicability in this case of sec. 6404(g), regarding suspension of interest and penalties; and (3) the denial of a request for abatement of interest. Petitioner, however, did not include these issues in either her trial memorandum or her post-trial brief. We therefore consider them to have been abandoned.

[2]The underlying deficiency in this case is based upon a computational adjustment made by respondent in accordance with partnership level adjustments. Those adjustments were upheld by this Court in Cactus Wren Jojoba, Ltd. v. Commissioner, T.C. Memo. 1997-504. In that case, this Court reviewed respondent's determinations with respect to Yuma Mesa and a related partnership. We held that the partnerships did not directly or indirectly engage in research or experimentation and that the partnerships lacked a realistic prospect of entering into a trade or business. In upholding respondent's disallowance of $1,298,031 in research and experimental expenditures claimed by

(continued...)

Some of the facts have been stipulated and are so found. The stipulations of fact and the attached exhibits are incorporated herein by this reference. Petitioner resided in Mason, Texas, on the date the petition was filed in this case.

Petitioner is a retired medical doctor who was practicing as an anesthesiologist in 1982. She spent 11 years as a student in postsecondary education and at some time was on the teaching staff of Southwestern Medical School and Children's Medical Center. Over the years, petitioner has had experience in several investments other than Yuma Mesa, including other partnership interests, rental properties, stocks, and mutual funds.

Petitioner learned of the Yuma Mesa investment opportunity from a personal friend, Dr. Sam Huggins. Dr. Huggins talked to the promoters of the partnership, who in turn contacted petitioner. Petitioner then met with the promoters, including Raymond H. Meinke, and as a result of this meeting agreed to invest in the partnership. Prior to learning of Yuma Mesa, petitioner had developed an interest for, and possessed general knowledge concerning, jojoba and its potential medical and cosmetic applications. Petitioner, however, did not

---

[2](...continued)
Yuma Mesa, we described the research and development agreement entered into by the partnership as "mere window dressing, designed and entered into solely to decrease the cost of participation in the jojoba farming venture for the limited partners through the mechanism of a large upfront deduction for expenditures that in actuality were capital contributions." Id.

independently research the current market for jojoba, its availability or prices, or cash-flow projections. Neither did she independently investigate the principals controlling Yuma Mesa.

According to the private placement memorandum distributed by the promoters of Yuma Mesa, the partnership was organized "to engage in research and development and, thereafter, participate in the marketing of the products of the jojoba plant." Interests in the partnership were offered for $12,245 each, payable by cash of $3,571 and a 4-year promissory note of $8,674 bearing 10-percent annual interest.

Yuma Mesa was organized as a limited partnership with two cogeneral partners. The general partners, G. Dennis Sullivan and William Woodburn, were lawyers; the private placement memorandum listed no experience of either outside the legal field. Yuma Mesa was to enter into a "Research and Development Agreement" with Hilltop Plantations, Inc. (Hilltop), which would in turn enter into a farming subcontract with its wholly owned subsidiary, Mesa Plantations, Inc. (Mesa). Hilltop was then to enter into an "Experimental Agricultural Lease" with Hilltop Ventures, a general partnership with identical ownership as Hilltop. This lease was to be assigned to Mesa upon completion of the research and development. Finally, Hilltop was to enter into a "Research and Development Management Agreement" with

Agricultural Investments, Inc., which was to be the "manager" of the project.

Hilltop (as well as Mesa and Hilltop Ventures) was controlled by four individuals.  These individuals were Mr. Meinke (president, director, and shareholder), Keith A. Damer (vice president, secretary, director, and shareholder), Marlin G. Peterson (vice president, treasurer, director, and shareholder), and Cecil R. Almand (shareholder).  The three officer/directors of Hilltop were all listed as certified public accountants with expertise in the tax field.  The private placement memorandum listed no experience of any of the officer/directors or shareholders which is relevant to the farming of jojoba.

The private placement memorandum contained language specifically alerting investors to the planned deduction of the "research and development" costs, as well as other tax risks involved in making an investment in the partnership.  The document also contained an opinion letter stating that the research and development agreement contained therein met the requirements of section 174.  A copy of this document was distributed to petitioner, but she did not thoroughly review it. Potential investors were required to provide information concerning any previous experience in tax shelter investments, and the subscription agreement required investors to initial a

statement that the investor had been advised to consult with an attorney concerning the tax consequences of the investment.

Petitioner purchased two interests in Yuma Mesa in December 1982.  At the time she purchased the interests, she knew of the sizeable tax benefits that the promoters projected the partners would receive for taxable year 1982.  Petitioner was issued a Schedule K-1 by the partnership which reflected a $23,174 ordinary loss for taxable year 1982.  At this time, petitioner had just recently contributed only $7,142 in cash to the partnership.[3]

As a limited partner, petitioner did not participate in the activities of the partnership.  She did not hear of Yuma Mesa until several years later, when she was contacted by other limited partners who were concerned that they were being treated unfairly by the general partners and that their investments might have been diverted into another partnership.

On petitioner's Federal income tax return for taxable year 1982, she reported $121,000 in compensation from her professional association, and $2,421.61 in other income.  From this she subtracted a $23,254.99 loss as reported on Schedule E.  On the

---

[3]Petitioner testified that she was uncertain of the amount of cash she contributed in 1982.  Because nothing else in the record indicates petitioner's investment varied from that which was stated in the private placement memorandum, we accept this document's stated terms as accurately reflecting petitioner's investment.

Schedule E, she reported two rental losses totaling $13,527.99, two partnership losses totaling $24,184 (including her $23,174 distributive share of Yuma Mesa's loss), and a gain from another partnership of $14,457.

After examining Yuma Mesa's partnership return for taxable year 1982, respondent disallowed the $1,298,031 deduction claimed as research and development costs and increased the partnership's income by a total of $1,307,781. Respondent's determinations were upheld in their entirety by this Court. Respondent subsequently determined that petitioner's portion of the partnership level adjustment resulted in an $11,587 deficiency. Respondent issued petitioner a statutory notice of deficiency determining additions to tax under sections 6653(a)(1), 6653(a)(2), and 6661, in the respective amounts of $579, 50 percent of the interest due on an $11,587 deficiency, and $2,897.

The first issue for decision is whether petitioner is liable for additions to tax for negligence under section 6653(a)(1) and (2). Section 6653(a)(1) imposes an addition to tax equal to 5 percent of the underpayment of tax if any part of the underpayment is attributable to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) provides for a further addition to tax equal to 50 percent of the interest due on the portion of the underpayment attributable to negligence or intentional disregard of rules and regulations.

Negligence is defined to include "any failure to reasonably attempt to comply with the tax code, including the lack of due care or the failure to do what a reasonable or ordinarily prudent person would do under the circumstances." Chamberlain v. Commissioner, 66 F.3d 729, 732 (5th Cir. 1995), affg. in part and revg. in part T.C. Memo. 1994-228. Generally, courts look both to the underlying investment and to the taxpayer's position taken on the return in evaluating whether a taxpayer was negligent. See Sacks v. Commissioner, 82 F.3d 918, 920 (9th Cir. 1996), affg. T.C. Memo. 1994-217. However, the Court of Appeals for the Fifth Circuit, to which appeal lies in this case, has held that the proper inquiry in negligence cases is whether the taxpayer was reasonable in claiming the loss. See Reser v. Commissioner, 112 F.3d 1258, 1271 (5th Cir. 1997), affg. in part and revg. in part T.C. Memo. 1995-572; Durrett v. Commissioner, 71 F.3d 515, 518 (5th Cir. 1996), affg. in part and revg. in part T.C. Memo. 1994-179; Chamberlain v. Commissioner, supra at 733. We will therefore focus on the reasonableness of petitioner's claiming the loss on her return. Petitioner argues that she was not negligent because she relied on the advice of professionals--Mr. Meinke and Mr. Mussina--in claiming the loss.

Good faith reliance on professional advice concerning tax laws is a defense to the negligence penalties. See Chamberlain v. Commissioner, supra at 732. The advice must be objectively

reasonable and must not be from one with an inherent conflict of interest or from one with no knowledge concerning the matter upon which the advice is given.  See id.

The advice petitioner allegedly received from Mr. Meinke fails as a defense to negligence due to the clear presence of a conflict of interest.  See id.; Rybak v. Commissioner, 91 T.C. 524, 565 (1988).  Mr. Meinke was a promoter of the Yuma Mesa partnership and was a principal in the related entities.  Thus, any reliance on Mr. Meinke by petitioner was not reasonable.

Petitioner asserts that she also received advice concerning the proper tax treatment of the loss from Mr. Mussina.  Mr. Mussina was an accountant and attorney who had prepared tax returns for petitioner and advised her concerning legal matters such as the creation of a deferred compensation plan for her professional association.  The only evidence in the record supporting petitioner's assertion that she relied upon Mr. Mussina is petitioner's testimony that she made an inquiry into the legality of the partnership, to which Mr. Mussina answered that the partnership appeared to be "legal and properly put together."  No testimony was given that she inquired into the proper tax treatment of the partnership loss.  No corroborating evidence for the general advice was presented.  The alleged advice was sought before petitioner made her investment, and not at the time she filed her return.  Petitioner could not recall

whether she visited Mr. Mussina in person or sent him papers to review, she could not recall whether he provided her with a written opinion, and she could not recall whether she was billed for the advice.

The facts in this case are similar to those in Glassley v. Commissioner, T.C. Memo. 1996-206.  In that case we found that the taxpayers--

> acted on their fascination with the idea of participating in a jojoba farming venture and their satisfaction with tax benefits of expensing their investments, which were clear to them from the promoter's presentation.  They passed the offering circular by their accountants for a "glance" * * *.

Id.  Similarly, petitioner in this case acted on her enthusiasm for the potential uses of jojoba and acted with knowledge of the tax benefits of making the investment.  There is no reliable evidence in the record suggesting the exact nature of the advice that was given, or upon what facts such advice was based. Petitioner has failed to establish that she consulted with Mr. Mussina concerning the proper tax treatment of the partnership loss, or even if she had, that her reliance on such advice was reasonable or in good faith.  See id.; Chamberlain v. Commissioner, supra at 732.

In her brief, petitioner cites Kantor v. Commissioner, 998 F.2d 1514 (9th Cir. 1993), affg. in part and revg. in part T.C. Memo. 1990-380.  In Kantor, the Court of Appeals for the Ninth Circuit held that the taxpayers were not negligent because they

were not acting unreasonably in claiming a section 174 deduction for the development of computer software. The court noted the almost complete absence of case law interpreting section 174 at the time the taxpayers claimed the deduction and stated that the taxpayers reasonably could have been led to believe by the general partner's experience and involvement with the research project that they were entitled to the deduction. The court further stated: "At the time appellants invested, there were few, if any, warning signs that they would not be entitled to the deduction." Id. at 1522-1523. In this case, we have held that petitioner's reliance upon Mr. Meinke's advice was not reasonable because of the inherent conflict of interest. Furthermore, petitioner has not established that she received advice concerning the deduction from anyone independent of the investment, or that she conducted her own investigation into the propriety of the deduction. Petitioner may not rely upon a "lack of warning" as a defense to negligence, where there is no evidence that a reasonable investigation was ever made which would have allowed her to discover such a lack of warning.

Petitioner also cites Heasley v. Commissioner, 902 F.2d 380 (5th Cir. 1990), revg. T.C. Memo. 1988-408. The relevancy of Heasley to petitioner's situation is unclear. Unlike the taxpayers in Heasley, petitioner is not a moderate income, blue collar investor without prior investment experience who relied

upon financial advisers and accountants in making an investment and claiming a loss.  On the contrary, she was a medical doctor with previous involvement in several other types of investments. Furthermore, petitioner did not thoroughly review the private placement memorandum, despite her investment experience, and made little or no effort to monitor her investment.

We uphold respondent's determination that petitioner is liable for the section 6653(a)(1) and (2) additions to tax for negligence.

The second issue for decision is whether petitioner is liable for the addition to tax under section 6661 for a substantial understatement of tax.  Section 6661(a), as amended by the Omnibus Budget Reconciliation Act of 1986, Pub. L. 99-509, sec. 8002, 100 Stat. 1951, provides for an addition to tax of 25 percent of the amount of any underpayment attributable to a substantial understatement of income tax for the taxable year.  A substantial understatement of income tax exists if the amount of the understatement exceeds the greater of 10 percent of the tax required to be shown on the return, or $5,000.  See sec. 6661(b)(1)(A).  Generally, the amount of an understatement is reduced by the portion of the understatement which the taxpayer shows is attributable to either (1) the tax treatment of any item for which there was substantial authority, or (2) the tax treatment of any item with respect to which the relevant facts

were adequately disclosed on the return.  See sec. 6661(b)(2)(B).
If an understatement is attributable to a tax shelter item,
however, different standards apply.  First, in addition to
showing the existence of substantial authority, a taxpayer must
show that he reasonably believed that the tax treatment claimed
was more likely than not proper.  See sec. 6661(b)(2)(C)(i)(II).
Second, disclosure, whether or not adequate, will not reduce the
amount of the understatement.  See sec. 6661(b)(2)(C)(i)(I).

Substantial authority exists when "the weight of authorities
supporting the treatment is substantial in relation to the weight
of the authorities supporting contrary positions."  See sec.
1.6661-3(b)(1), Income Tax Regs.  Petitioner argues that no
authority, other than the statute itself, existed at the time she
claimed the loss.  Lack of authority, however, necessarily cannot
provide the substantial authority required under the statute and
regulations.

Adequate disclosure may be made either in a statement
attached to the return, or on the return itself, if it is in
accordance with the requirements of Rev. Proc. 83-21, 1983-1 C.B.
680.  See sec. 1.6661-4(b), (c), Income Tax Regs.  Nothing in the
record indicates petitioner attached a statement to her 1982
return.  Rev. Proc. 83-21, applicable to tax returns filed in
1983, lists information which is deemed sufficient disclosure
with respect to certain items, none of which are involved in this

case.  If disclosure is not made in compliance with the regulations or the revenue procedure, adequate disclosure on the return may still be satisfied if sufficient information is provided to enable respondent to identify the potential controversy involved.  See Schirmer v. Commissioner, 89 T.C. 277, 285-286 (1987).  Petitioner argues that the deduction was clearly indicated on the return.  Merely claiming the loss, without further explanation, was not sufficient to alert respondent to the controversial section 174 deduction of which the partnership loss consisted.

Finally, section 6661(c) provides the Secretary with the discretion to waive the section 6661(a) addition to tax if the taxpayer shows he acted with reasonable cause and in good faith. We review the Secretary's failure to waive the addition to tax for abuse of discretion.  See Martin Ice Cream Co. v. Commissioner, 110 T.C. 189, 235 (1998).  Petitioner argues that she acted in good faith and reasonably relied upon Mr. Meinke and Mr. Mussina in claiming the loss.  However, nothing in the record indicates petitioner requested a waiver for good faith and reasonable cause under section 6661(c).  In the absence of such a request, we cannot review respondent's determination for an abuse of discretion.  See id.

Because petitioner did not have substantial authority for her treatment of the partnership loss and did not adequately

disclose the relevant facts of that treatment, we uphold respondent on this issue.

The third issue for decision is whether this Court has jurisdiction to review the section 6621(c) tax-motivated interest assessed by respondent. Section 6621(c), formerly section 6621(d)--as in effect for taxable years for which returns were due prior to 1990, for interest accruing after 1984--provides an increased rate of interest for substantial underpayments attributable to tax-motivated transactions. This Court generally lacks jurisdiction to redetermine interest prior to an entry of a decision redetermining a deficiency. See sec. 7481(c) (as currently in effect); Rule 261; Pen Coal Corp. v. Commissioner, 107 T.C. 249, 255 (1996). Furthermore, this Court generally does not have jurisdiction to review respondent's assessment of section 6621(c) tax-motivated interest in affected item proceedings, such as in the present case, even though the tax-motivated interest is an affected item which requires a partner level determination. See White v. Commissioner, 95 T.C. 209 (1990); Greene v. Commissioner, T.C. Memo. 1995-105. A narrow exception to this rule applies if a taxpayer has paid the assessed tax-motivated interest and subsequently invokes the overpayment jurisdiction of this Court under section 6512(b). See Barton v. Commissioner, 97 T.C. 548 (1991).

Petitioner nevertheless argues that this Court has jurisdiction to review such assessments under section 6621(c)(4). Section 6621(c)(4) provides as follows:

> (4) Jurisdiction of Tax Court.--In the case of any proceeding in the Tax Court for a redetermination of a deficiency, the Tax Court shall also have jurisdiction to determine the portion (if any) of such deficiency which is a substantial underpayment attributable to tax motivated transactions.

Respondent presumably determined that the underlying deficiency in this case was a substantial underpayment attributable to a tax-motivated transaction. This Court does not have jurisdiction to review the underlying deficiency, however, because it was a computational adjustment made pursuant to an adjustment to a partnership item determined in a partnership proceeding. See Saso v. Commissioner, 93 T.C. 730, 734 (1989). Thus, because the underlying deficiency is not before this Court, section 6621(c)(4) cannot confer jurisdiction on this Court to determine what portion of such underlying deficiency is attributable to a tax-motivated transaction. Furthermore, although each addition to tax at issue in this case is a "deficiency" within the meaning of section 6621(c)(4), section 6621(c)(2) excludes additions to tax from the definition of "substantial underpayment attributable to tax motivated transactions," thereby precluding review under section 6621(c)(4). See White v. Commissioner, supra at 216.

Petitioner further argues that this Court has jurisdiction over this matter because the amount assessed by respondent under

the authority of section 6621(c) is a penalty, not interest. Tax-motivated interest is clearly interest, prescribed in the same manner as all interest--under section 6601(a) at the rate set forth in section 6621.  Even if the interest could be considered a "penalty", it is nonetheless prescribed by section 6601(a) and therefore subject to the same jurisdictional restrictions as regular interest prescribed by section 6601(a). See <u>Pen Coal Corp. v. Commissioner</u>, <u>supra</u> at 255.

Because the record does not indicate that petitioner has paid the section 6621(c) tax-motivated interest assessed by respondent, this Court does not have jurisdiction to review its assessment.  Based upon this holding, we do not reach the issue of whether such interest was properly assessed in this case.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.