Joseph B. DURRETT, Jr. and Carolyn C. Durrett, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

No. 94–41264.

United States Court of Appeals, Fifth Circuit.

Jan. 2, 1996.

Thomas E. Redding, Sallie W. Galdney, Redding & Associates, Houston, TX, for appellants.

Annette M. Wietecha, Gary R. Allen, Andra R. Tebbets, Jonathan Cohen, Loretta Argrett, Asst. Atty. Gen., Appellate Sect., Tax Div., U.S. Dept. of Justice, Washington, DC, Stuart L. Borwn, Chief Counsel, IRS, Washington, DC, for appellee.

Before POLITZ, Chief Judge, and HILL * and DeMOSS, Circuit Judges.

POLITZ, Chief Judge:

Taxpayers, Joseph B. and Carolyn C. Durrett, appeal the Tax Court's decision upholding the penalties assessed by the Commis-

* Circuit Judge of the Eleventh Circuit, sitting by designation.

sioner of Internal Revenue. We affirm in part and reverse in part.

## Background

The Durretts were among several thousand investors who participated in the late 1970s and early 1980s in the First Western tax shelter program. In *Freytag v. Commissioner of Internal Revenue* [1] we reviewed that program and determined that it was a sham.[2]

The Durretts claimed ordinary loss deductions of $143,795 (1979); $391,422 (1980); and $398,043 (1981). After *Freytag,* the Durretts stipulated that they were not entitled to the loss deductions. They went to trial on the assessment of penalty interest because of substantial tax underpayment attributable to a tax-motivated transaction,[3] and the assessment of an additional penalty for taxpayer's negligence.[4] A third issue arose on the eve of trial when the taxpayers asserted they were entitled to claim in 1980 an investment tax credit carryback from 1983. The Tax Court ruled against the Durretts on all three issues. Taxpayers timely appealed.

## Analysis

### Section 6621(c)—penalty interest

Section 6621(c) of the Internal Revenue Code imposes an interest rate of 120% of the normal rate for substantial underpayment of tax, i.e. more than $1,000, if such underpayment is attributable to a tax motivated transaction. Tax motivated transactions include, *inter alia,* "any sham or fraudulent transaction." [5] For purposes of section 6621(c), "[a] sham or fraudulent transaction includes transactions that were not entered into for profit and are without economic substance." [6]

In our recent decision, *Chamberlain v. Commissioner of Internal Revenue* [7], we affirmed the Tax Court's finding that the taxpayer did not have a profit motive despite his contrary testimony. There, as here, we review the Tax Court's legal conclusions *de novo,* but accept its findings of fact unless found to be clearly erroneous.[8] Moreover, "[w]hen the trial court's finding is based, in part, on the assessment of credibility, 'we will not depart from such assessment except in the very rarest of circumstances.'" [9]

In the case at bar, the Tax Court found that the Durretts did not have a profit motive despite testimony to the contrary. It is clear that the Tax Court's finding is based in large part on credibility assessments. We must conclude, under the appropriate deferential standard of review, that such a factual finding is not clearly erroneous. We therefore find no error in the imposition of the section 6621(c) interest rate.

### Section 6653(a)—negligence penalty

The Tax Court's finding of negligence is reviewed for clear error.[10] During the tax year at issue, section 6653(a) of the Internal Revenue Code imposed a penalty of 5% of any underpayment of tax plus an amount equal to 50% of the interest due on the underpayment if the underpayment was due to negligence.[11] "'Negligence' includes any failure to reasonably attempt to comply with the tax code, including lack of due care or the failure to do what a reasonable or ordinarily prudent person would do under

1. 904 F.2d 1011 (5th Cir.1990), *aff'd on other grounds,* 501 U.S. 868, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991).

2. The Durretts stipulated that the transaction was the same as in *Freytag* inasmuch as they acknowledge the disallowance of the loss deductions.

3. 26 U.S.C. § 6621(c).

4. 26 U.S.C. § 6653(a).

5. 26 U.S.C. § 6621(c)(3)(A)(v).

6. *Lukens v. Commissioner of Internal Revenue,* 945 F.2d 92, 99 (5th Cir.1991).

7. 66 F.3d 729 (5th Cir.1995).

8. *Chamberlain,* 66 F.3d at 732.

9. *Id.*

10. *Sandvall v. Commissioner of Internal Revenue,* 898 F.2d 455 (5th Cir.1990).

11. 26 U.S.C. § 6653(a).

the circumstances."[12]

■ Good faith reliance on professional advice concerning tax laws is a defense.[13] Here the Durretts sought professional advice from their attorney, a tax accountant, and the vice president of finance for the parent corporation of the subsidiary that employed Joseph Durrett. In *Chamberlain* we stated that "for the imposition of a negligence penalty, we ask whether the taxpayer was acting reasonably in claiming the loss."[14] We conclude that the record adequately establishes that it was reasonable for the Durretts to rely on the advice of these experts. As we held in *Chamberlain*, "[t]o require the taxpayer to challenge the [expert], to seek a 'second opinion,' or to try to monitor [the expert] on the provisions of the Code would nullify the very purpose of seeking the advice of a presumed expert in the first place."[15] We must therefore conclude that the Tax Court erred in finding taxpayers negligent for claiming the loss and that the imposition of the negligence penalty must be reversed.

### Denial of Motion for Leave to Amend

■ The Tax Court's denial of taxpayer's motion for leave to amend their petition is reviewable under an abuse of discretion standard.[16] In exercising its discretion the Tax Court must consider such factors as the timeliness of the motion, the reasons for delay, whether granting the motion would result in issues being presented in a seriatim fashion, and whether the party opposing the motion would be unduly prejudiced.[17] We are not persuaded that the Tax Court abused its discretion in its application of these factors to the facts of this case.

A motion for leave to amend was filed eight days before trial; taxpayers offered no valid reasons for such a delay. In order to determine whether the tax credit carryback is valid the Commissioner would have needed information regarding taxpayer's 1983 tax return. Recognizing the difficulty of reconstructing the 10–year old transactions, assuming the taxpayer's files were available, such an allowance might result in a resolution of this case in a piecemeal fashion, with potential prejudice to the Commissioner's position. We must conclude that taxpayers had ample time to raise this issue before the eve of trial, that they failed to do so without an adequate reason, and that the Tax Court did not err or abuse its discretion in refusing to allow the amendment.

The judgment of the Tax Court is AFFIRMED IN PART and REVERSED IN PART, as set forth herein.

---

12. *Chamberlain*, 66 F.3d at 732; *Heasley v. Commissioner of Internal Revenue*, 902 F.2d 380, 383 (5th Cir.1990).

13. *United States v. Boyle*, 469 U.S. 241, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985).

14. *Chamberlain*, 66 F.3d at 733.

15. *Id.*

16. *Avatar Exploration, Inc. v. Chevron, U.S.A., Inc.*, 933 F.2d 314 (5th Cir.1991).

17. *Daves v. Payless Cashways, Inc.*, 661 F.2d 1022 (5th Cir.1981).