# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 23, 2014

No. 12-60727

Lyle W. Cayce
Clerk

BASIM SHAMI; RANIA ARDAH; ARTHUR J. GOERTZ; JO MCCALL GOERTZ; FAROUK SHAMI; IZZIAH SHAMI; SHAUKAT GULAMANI; RAMI SHAMI; NAJAT BADRAN; JOHN MCCALL; KATHY MCCALL,

Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE,

Respondent–Appellee.

Appeals from the Decisions
of the United States Tax Court

Before WIENER, DENNIS, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Basim Shami, Rania Ardah, Arthur J. Goertz, Jo McCall Goertz, Farouk Shami, Izziah Shami, Shaukat Gulamani, Rami Shami, Najat Badran, John McCall, and Kathy McCall (collectively, Petitioners) appeal the United States Tax Court's judgments upholding in part the deficiency asserted by Respondent–Appellee Commissioner of Internal Revenue (the Commissioner) related to research and development tax credits claimed by Farouk Systems, Inc., a company in which Petitioners were investors. We affirm in part, vacate in part, and remand for further proceedings.

No. 12-60727

## I

This case concerns tax credits claimed by Farouk Systems, Inc. (FSI) for tax years 2003, 2004, and 2005, for increasing research and development (R&D) under § 41 of the Internal Revenue Code.  Section 41 grants a taxpayer a twenty-percent tax credit for the amount of "qualified research expenses" (QREs) it incurs that exceed a base amount.[1]  QREs include, among other things, wages and supply costs expended on qualified research.[2]  Not all R&D expenses are QREs.  In order to qualify as a QRE, (1) the expense must be of the type deductible under § 174 of the Code (i.e., R&D expenses that are reasonable under the circumstances), (2) the research must be undertaken for the purposes of discovering information that is "technological in nature," (3) the information must be "intended to be useful in the development of a new or improved business component of the taxpayer," and (4) "substantially all of the activities [must] constitute elements of a process of experimentation."[3]  When an employee has performed both qualified and nonqualified services, only the amount of wages attributable to the conduct of qualified services may be counted as a QRE.[4]  However, if eighty percent or more of an employee's wages are allocated to the performance of qualified services, then all of the employee's wage can be counted as a QRE.[5]

---

[1] 26 U.S.C. § 41(a).

[2] *Id.* § 41(b)(2).

[3] *Id.* § 41(d)(1); *see also United States v. McFerrin*, 570 F.3d 672, 676 (5th Cir. 2009).

[4] Treas. Reg. § 1.41-2(d)(1) (as amended in 2001).

[5] Treas. Reg. § 1.41-2(d)(2) (as amended in 2001).

No. 12-60727

Each Petitioner was a shareholder in FSI for at least one of the tax years at issue. Because FSI is a Subchapter S corporation[6], Petitioners reported FSI's income, losses, deductions, and credits on their personal tax returns. FSI develops, manufactures, and sells hair care and other cosmetic products. It was founded by Petitioner Farouk Shami. During the tax years in question, FSI had several hundred employees, including between eighteen and twenty-seven employees on its R&D staff.

FSI contracted with alliantgroup, LP to conduct R&D credit studies. The studies concluded that FSI could claim the following amounts of QREs:

|           | 2003 | 2004 | 2005 |
|-----------|------|------|------|
| **Wages:** | $16,325,517[7] | $11,530,159 | $4,016,456 |
| **Supplies:** | $431,489 | $0 | $3,769 |
| **Total:** | $16,757,006 | $11,530,159 | $4,020,226 |

Although FSI claimed that dozens of its employees engaged in qualified research each year, the bulk of its wage QREs came from the salaries of two FSI employees: Farouk Shami and John McCall. Together, their wages accounted for over 80% of the wage QREs FSI claimed in 2003, 2004, and 2005. Shami served as chairman of FSI's board of directors in each of these years and was FSI's president and CEO in 2003. McCall held the title of cochairman of FSI's board of directors in 2003 and 2004. Neither Shami nor McCall has any formal education or training in chemistry or engineering.

The QREs allegedly incurred by FSI enabled it to claim a § 41 credit of $1,072,170 in 2003, $749,460 in 2004, and $261,315 in 2005. The Commissioner

---

[6] *See* 26 U.S.C. §§ 1361(a)(1), 1363(a) (explaining that an S corporation is "a small business corporation" meeting specified requirements, that elects to be taxed in the same manner as an individual).

[7] FSI ultimately claimed $16,063,430 in wage QREs in its 2003 tax documents.

subsequently served notices of deficiency on each Petitioner, challenging the entirety of the credit claimed by FSI. Petitioners petitioned the Tax Court for redetermination of the deficiency.

The Tax Court held a four-day trial during which both the Petitioners and the Commissioner made concessions. The full scope of the Commissioner's concessions is in dispute. At a minimum, the parties agree that the Commissioner conceded that, with the exception of the wage QREs attributable to Shami, McCall, and two other highly compensated FSI employees, it would not dispute the wage QREs claimed by FSI. The parties dispute whether this concession encompassed the supply-cost QREs FSI claimed in 2003 and 2005. Petitioners later conceded that the wages paid to the other two highly compensated employees were not legitimate QREs. These concessions left the QREs attributable to Shami and McCall as the only wage QREs in dispute. Petitioners offered laboratory records as well as the testimony of Shami, McCall, and two FSI employees to substantiate the amount of time Shami and McCall spent performing qualified services.

Following the trial, the Tax Court issued its Memorandum Findings of Fact and Opinion. The court concluded that Petitioners had not carried their burden of proving how much of Shami's and McCall's wages could be allocated to qualified services, if any. It explicitly found the testimony offered by Petitioners to be noncredible.

After the Tax Court issued its opinion, the parties submitted proposed calculations of the amount of deficiency as to each Petitioner. For 2003 and 2005—the two tax years in which FSI claimed supply-cost QREs—the Commissioner's calculations included as part of the deficiency the credit FSI claimed based on supply-cost QREs. Petitioners disputed this part of the Commissioner's calculations, contending that the Commissioner had conceded that all of FSI's QREs were legitimate except for those attributable to FSI's

No. 12-60727

highly compensated employees.  In its final Order and Decision with respect to each Petitioner, the Tax Court concluded that the Commissioner had not conceded the supply-cost QRE issue; because Petitioners had offered no evidence regarding supply costs, the Tax Court adopted the Commissioner's calculation of the deficiencies.  This appeal followed.

## II

In general, we review decisions of the Tax Court using the same standard of review we apply to district court decisions: findings of fact are reviewed for clear error, and issues of law are reviewed de novo.[8]  We find clear error only when we are "left with the definite and firm conviction that a mistake has been made."[9]  "Moreover, '[w]hen the trial court's finding is based, in part, on the assessment of credibility, we will not depart from such assessment except in the very rarest of circumstances.'"[10]

We review the Tax Court's decision to exclude evidence under Federal Rule of Evidence 403 for abuse of discretion.[11]  We apply the same standard when reviewing the Tax Court's decision to provide relief on the basis of stipulations of the parties.[12]

---

[8] *E.g.*, *Green v. Commissioner*, 507 F.3d 857, 866 (5th Cir. 2007).

[9] *Streber v. Commissioner*, 138 F.3d 216, 219 (5th Cir. 1998).

[10] *Durrett v. Commissioner*, 71 F.3d 515, 517 (5th Cir. 1996) (alteration in original) (quoting *Chamberlain v. Commissioner*, 66 F.3d 729, 732 (5th Cir. 1995)).

[11] *See* 26 U.S.C. § 7453 (providing that proceedings in the Tax Court shall be conducted in accordance with the rules of evidence applicable in nonjury trials in the District Court for the District of Columbia—i.e., the Federal Rules of Evidence); *United States v. Flitcraft*, 803 F.2d 184, 186 (5th Cir. 1986) ("A district court's ruling under [Federal] Rule [of Evidence] 403 will not be disturbed except for an abuse of discretion." (citing *United States v. Burton*, 737 F.2d 439, 443 (5th Cir. 1984))).

[12] *See Henry v. Commissioner*, 362 F.2d 640, 643 (5th Cir. 1966); *see also Graham v. Commissioner*, 134 F. App'x 704, 706 (5th Cir. 2005).

No. 12-60727

## III

Petitioners raise two issues regarding their documentary evidence. First, they claim that the Tax Court abused its discretion by refusing to permit them to introduce over 4,500 pages of records of laboratory tests into evidence. Second, Petitioners assert that they used samples rather than all underlying documents only because counsel for the Commissioner conceded that the case was not a "documentary substantiation case." Given this concession, Petitioners claim that the Tax Court's finding amounted to a "ratification of [the Commissioner's] reversal of a concession which [Petitioners] specifically relied upon to address the court's improper refusal." Neither of these arguments is meritorious.

## A

The Tax Court did not abuse its discretion by limiting Petitioners to the introduction of dozens of sample records of its laboratory tests as opposed to the over 4,500 pages that Petitioners sought to admit. Under Federal Rule of Evidence 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[13] In this case, introduction of all of the laboratory-test records would have resulted in needless delay, wasted time, and unnecessary cumulation of evidence, which substantially outweighed the minimal probative value of the additional records.

The two primary issues at trial were (1) whether Shami and McCall engaged in qualified research and, if so, (2) the amount of time they spent on such activities. Although Petitioners imply that the records excluded by the Tax Court contained the evidence that would have answered both of these questions,

---

[13] FED. R. EVID. 403.

a review of the hundreds of pages of records that Petitioners successfully entered into the record—records that they themselves described as "examples to go through that'll be useful to educate the Court without introducing" all of the records—reveals that the records are devoid of evidence as to Shami's and McCall's performance of qualified services.  None of the records contains any reference to McCall, and only a few dozen of the several hundred pages submitted reflect that Shami "approved" that particular document.  It is unclear what "approving" a document means, and Petitioners do not elaborate in their briefing.  Accordingly, although the records suggest that employees of FSI engaged in R&D, they are not probative with respect to whether Shami and McCall did so.

Under these circumstances, the introduction of further records would have plainly been a waste of time.  We therefore hold that the Tax Court did not abuse its discretion in limiting Petitioners to samples of the records.[14]

**B**

Petitioners next assert that, during a pretrial telephone status conference, of which there is no record, counsel for the Commissioner conceded that the Commissioner would not "challenge the sufficiency of available documentary substantiation."  They argue that the Tax Court's conclusion that they had not proven their case amounts to acceptance of a reversal of this concession.  In essence, Petitioners contend that, in light of the Commissioner's concession, the Tax Court should have let Petitioners prove their case with nondocumentary forms of evidence.  Petitioners' argument does not carry the day.

The alleged concession does not appear in the record, and it conflicts with the Commissioner's position reflected in the record.  For example, at a May 24, 2010, hearing regarding discovery issues, counsel for the Commissioner stated

---

[14] *See, e.g.*, *Flitcraft*, 803 F.2d at 186.

that the question in the case was "a substantiation question."  In any event, the Tax Court did *not* hold that Petitioners could meet their burden only by presenting documentary evidence.  To the contrary, the Tax Court's opinion reveals that it considered all of the evidence, including the testimony proffered by Petitioners.  Petitioners might have proven their case through testimony, but the Tax Court found the testimony they presented to be noncredible.

## IV

Petitioners contend that the Tax Court imposed a "standard of exactitude" on them, which, citing the legislative history to § 41, they claim is inappropriately high.  They assert that the court required them to provide "specific documentary evidence showing the allocation between qualifying and non-qualifying costs," including "time records establishing the time its employees spen[t] on qualified research."  Petitioners also allege that the burden imposed by the Tax Court conflicts with precedent that permits the court to estimate the amount of a tax benefit once entitlement to *some* benefit has been proven.  Neither of these arguments withstands scrutiny.

## A

Petitioners' argument that the Tax Court imposed an inappropriate "standard of exactitude" that required them to produce specific documentation is unsupported by the record.  The Tax Court held Petitioners to the statutory burden of proof and did not require a particular form of documentary evidence.

In the Tax Court, the Commissioner's determination that Petitioners were not entitled to the § 41 credit was presumptively correct; Petitioners had the burden of proving that the determination was erroneous.[15]  "Tax credits are a matter of legislative grace, are only allowed as clearly provided for by statute,

---

[15] *E.g.*, TAX CT. R. 142; *Merryman v. Commissioner*, 873 F.2d 879, 882 (5th Cir. 1989).

and are narrowly construed."[16]  When claiming a tax credit, "[t]axpayers are required to retain records necessary to substantiate" the credit.[17]  With respect to § 41 in particular, the relevant Treasury regulation provides that "[a] taxpayer claiming a credit under section 41 must retain records in sufficiently usable form and detail to substantiate that the expenditures claimed are eligible for the credit."[18]  The Internal Revenue Service has explained that this regulation does not require a taxpayer "to keep records in a *particular* manner" so long as the records maintained by the taxpayer substantiate his entitlement to the credit.[19]

Petitioners contend that the Tax Court required them to provide a particular form of documentation.  This argument simply is not borne out by the record.  The court's opinion makes clear that it considered both the documentary evidence and testimony proffered by Petitioners: at no point did the court rule or suggest that Petitioners could prove their case only with documentary evidence.    Rather, the court observed that Petitioners provided no documentation to substantiate Shami's and McCall's QREs and explicitly rejected the testimony they offered as self-serving and unreliable. The premise underlying Petitioners' claim regarding the burden placed on them by the Tax Court is faulty.  The Tax Court made no error with respect to the burden it placed on Petitioners.

---

[16] *United States v. McFerrin*, 570 F.3d 672, 675 (5th Cir. 2009) (citing *Stinson Estate v. United States*, 214 F.3d 846, 848 (7th Cir. 2000)).

[17] *Id.* (citing 26 U.S.C. § 6001; Treas. Reg. § 1.6001-1(a), (e)).

[18] Treas. Reg. § 1.41-4(d) (as amended in 2004) (effective for tax years ending on or after Dec. 31, 2003).

[19] 66 Fed. Reg. 66362-01, 66366 (Dec. 26, 2001) (emphasis added); *see also* T.D. 9104, 2004-1 C.B. 406 ("[T]he 2001 proposed regulations do not contain a specific recordkeeping requirement beyond the requirements set out in section 6001 and the regulations thereunder.").

No. 12-60727

## B

Petitioners next assert that "[t]he use by [FSI] of [estimates of the amount of time Shami and McCall spent performing qualified services] was indisputably permissible" and that the type of documentation provided was adequately supportive. We disagree.

First, Petitioners' claim is waived. In their initial brief, the extent of Petitioners' argument is the sentence quoted above and a citation to this court's precedent in *United States v. McFerrin*,[20] which, following the venerable Second Circuit case *Cohan v. Commissioner*,[21] held that "[i]f the taxpayer can establish that qualified expenses occurred . . . , then the court should estimate the allowable tax credit."[22] Aside from a parenthetical to the citation, Petitioners make no effort to explain the *Cohan* rule or how it would apply to their case. Petitioners make only the bare assertion that their use of estimates was appropriate. Petitioners therefore have waived this issue by failing to brief it adequately.[23]

In the alternative, Petitioners' claim fails on the merits. A line of case law—beginning with the Second Circuit's decision in *Cohan*—holds that if a taxpayer proves that he is entitled to a tax benefit but does not substantiate the *amount* of the tax benefit, the court "should make as close an approximation as it can, bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making."[24] The underlying logic of the rule is that allowing no benefit

---

[20] 570 F.3d 672 (5th Cir. 2009).

[21] 39 F.2d 540 (2d Cir. 1930).

[22] *McFerrin*, 570 F.3d at 675 (citing *Cohan*, 39 F.2d at 544).

[23] *See, e.g.*, *Coury v. Moss*, 529 F.3d 579, 587 (5th Cir. 2008) (citing *Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185, 190 (5th Cir. 2007)).

[24] *E.g.*, *Cohan*, 39 F.2d at 544.

at all "appears . . . inconsistent with [the finding] that *something* was spent."[25] In *McFerrin*, this court held that the *Cohan* rule applies in the context of the § 41 credit.[26]

*Cohan* did not compel the Tax Court to make an estimate in this case. As the preceding discussion makes clear, the *Cohan* rule is not implicated unless the taxpayer proves that he is entitled to some amount of tax benefit. In the context of the § 41 credit, a taxpayer would do so by proving that its employee performed some qualified services. In this case, a careful reading of the Tax Court's opinion reveals that the Tax Court made no such finding.

Even if the Tax Court had determined that Petitioners proved that Shami and McCall performed some amount of qualified services, *Cohan* and *McFerrin* are not the only case law on this issue. As the Tax Court observed, another decision of this court issued between those two cases explains that the Tax Court has discretion to make an estimate under *Cohan*. In *Williams v. United States*,[27] this court made clear that, even though the Tax Court "might have considerable latitude in making estimates of amounts probably spent," the *Cohan* rule "certainly does not require that such latitude be employed."[28] Our decision in *Williams* explicitly held that the Tax Court "may not be compelled to estimate even though such an estimate, if made, might have been affirmed."[29] This was so because "the basic requirement is that there be sufficient evidence to satisfy the trier that at least the amount allowed in the estimate was in fact spent or

---

[25] *Id.* (emphasis added)

[26] *McFerrin*, 570 F.3d at 675, 679.

[27] 245 F.2d 559 (5th Cir. 1957).

[28] *Williams*, 245 F.2d at 560.

[29] *Id.*

incurred for the stated purpose," and "[u]ntil the trier has that assurance from the record, relief to the taxpayer would be unguided largesse."[30]

Neither *Williams* nor any other exception to the *Cohan* rule was before the court in *McFerrin*, and we do not read *McFerrin* to hold that *Cohan* is untempered by any exceptions. Petitioners also make no attempt to explain why *Williams* would not apply to their case. Even assuming that there were some conflict between *Williams* and *McFerrin*, *Williams* is our earlier precedent. "When panel opinions appear to conflict, we are bound to follow the earlier opinion."[31] Therefore, the Tax Court was entitled to decline to make an estimate if it found that Petitioners had not provided a reasonable basis on which to make one.

The Tax Court's finding that the record did not contain a reasonable basis on which to make an estimate is not clearly erroneous.[32] The documentary evidence submitted by Petitioners is silent about the amount of time Shami and McCall spent performing qualified services. Even though they and two FSI employees testified regarding the amount of time, the Tax Court, per its prerogative,[33] disregarded this testimony as contradictory, self-serving, and noncredible. When the Tax Court's finding depends on the assessment of credibility, "we will not depart from such assessment except in the very rarest of circumstances."[34] This case does not provide occasion to depart from the Tax

---

[30] *Id.*

[31] *H&D Tire & Automotive-Hardware, Inc. v. Pitney Bowes Inc.*, 227 F.3d 326, 330 (5th Cir. 2000).

[32] *See Williams*, 245 F.2d at 560-61 (reviewing for clear error the trial court's determination that the record contained a dearth of evidence upon which to base an estimate).

[33] *E.g.*, *Durrett v. Commissioner*, 71 F.3d 515, 517 (5th Cir. 1996).

[34] *See id.* (quoting *Chamberlain v. Commissioner*, 66 F.3d 729, 732 (5th Cir. 1995)) (internal quotation marks omitted).

Court's finding. Accordingly, the Tax Court did not err in refusing to estimate the amount of credit due Petitioners for the qualified services performed, if any, by Shami and McCall.

## V

Petitioners argue that the Tax Court failed to consider that direct supervision of qualified research is a qualified service under § 41 and, in any event, ignored the evidence, rendering its factual findings clearly erroneous. These arguments fail.

## A

Petitioners first contend that the Tax Court failed to heed that "direct supervision" of qualified research is a qualified service under § 41. Petitioners observe that the Commissioner conceded that it would not challenge the § 41 credit claimed with respect to FSI employees other than Shami, McCall, and two other highly compensated employees. Because Shami supervised employees that the Commissioner conceded were engaged in qualified research, Petitioners assert that Shami, by definition, performed qualified services, i.e., direct supervision of qualified research.

As the Tax Court recognized, § 41(b)(2)(B) provides that "qualified services" for the purposes of determining the amount of qualified in-house research expenses under the statute "means services consisting of (I) engaging in qualified research, or (ii) engaging in the direct supervision or direct support of research activities which constitute qualified research."[35] Regulations promulgated under § 41 elaborate that "direct supervision" means

> the immediate supervision (first-line management) of qualified research (as in the case of a research scientist who directly supervises laboratory experiments, but who may not actually perform experiments). "Direct supervision" does *not* include

---

[35] 26 U.S.C. § 41(b)(2)(B).

supervision by a higher-level manager to whom first-line managers report, even if that manager is a qualified research scientist.[36] In short, the supervisor of the direct supervisor of employees who conduct qualified research is not himself engaged in qualified research.

Petitioners allege that the stipulations and concessions at trial conclusively demonstrate that Shami engaged in direct supervision. We reject this argument. First, even accepting Petitioners' claims regarding the effect of the stipulations, Petitioners also had to prove the amount of Shami's wages that could be allocated to qualified services[37]—or at least provide a reasonable basis upon which the court could make an estimate under *Cohan.* The stipulations and concessions say nothing about the time Shami spent, if any, directly supervising FSI employees engaged in qualified research. As discussed above, our precedent does not require the Tax Court to estimate that amount of time.[38]

Second, it is far from clear that the stipulations and concessions indicate that Shami directly supervised FSI employees actually conducting qualified research as opposed to merely acting as an upper-level manager. Only one stipulation addresses his supervisory role, and it is inconclusive:

> Beginning April 26, 2004, and continuing throughout 2005, Ali Ghannad was vice president of R&D for [FSI]. His duties included without limitation; developing new products, managing the laboratory, managing quality control and managing quality assurance. Ali Ghannad reported to . . . Shami.

---

[36] Treas. Reg. § 1.41-2(c)(2) (as amended in 2001) (emphasis added).

[37] *E.g.*, Treas. Reg. § 1.41-2(d)(2) ("Wages paid to or incurred for an employee constitute in-house research expenses only to the extent the wages were paid or incurred for qualified services performed by the employee. If an employee has performed both qualified services and nonqualified services, only the amount of wages allocated to the performance of qualified services constitutes an in-house research expense.").

[38] *See supra* notes 27-31 and accompanying text.

No. 12-60727

Since Ali Ghannad was involved in developing new products, this stipulation offers some support for the contention that Shami engaged in *some* direct supervision of *some* qualified research. However, the stipulation also provides that Ghannad was FSI's R&D manager. As such, the stipulation suggests that Shami was an upper-level manager who supervised the FSI employees who, in turn, supervised the performance of qualified research. Indeed, two other stipulations state that laboratory technicians reported to FSI employees *other than* Shami.

The concession made by the Commissioner at trial likewise says nothing about whether Shami directly supervised FSI employees who actually conducted research. The record reflects that, on the second day of trial, counsel for the Commissioner advised the court that it could "see that experimentation [was] taking place," so "instead of challenging . . . all of the production of everyone, [the Commissioner would] focus in on the highly compensated employees." Petitioners imply that, given this concession, Shami, as the head of FSI, necessarily performed qualified services since he supervised FSI employees.

The Commissioner's concession cannot bear the weight placed on it by Petitioners. Even if we were to read the concession as conceding the validity of the QREs, the concession was not that all of FSI's other employees were themselves actually conducting qualified research: rather, the concession was general and could encompass QREs based on direct supervision. Accordingly, the concession could be entirely consistent with the conclusion that Shami—as the head supervisor at FSI—was not performing qualifying services. As the regulation makes clear, second-tier supervision—supervising supervisors—*does not* qualify as direct supervision for the purposes of § 41(b)(2)(B).

In short, the concessions made by the Commissioner do not compel the conclusion that Shami directly supervised the actual performance of qualified

15

services. On this record, the Tax Court's implicit conclusion that Petitioners had not proven that Shami engaged in direct supervision was not clearly erroneous.

## B

Petitioners also contend that, even assuming the Tax Court applied the correct legal standard, its conclusion that they had not proven the amount of time, if any, Shami and McCall spent performing qualified services was clearly erroneous. We disagree.

First, the documentation in the record says little about whether Shami performed any qualified services and nothing with respect to McCall. Petitioners submitted a number of internal memoranda and e-mails reporting the results of product tests to Shami and other employees of FSI. Although Petitioners assert that "each one of these documents was sent to . . . Shami to relay technical and testing information he needed to continue the chemical development of the product at issue therein," the memoranda do not facially support that claim. Notably, Petitioners submitted no responsive memoranda or e-mails sent by Shami.

The only other evidence proffered by Petitioners was testimonial. Petitioners presented three witnesses to substantiate Shami's research activities: Shami himself; Jason Yates, FSI's creative director during the tax years at issue; and Tai Pham, a chemist at FSI. Petitioners presented only McCall himself to substantiate the credit claimed based on his activities. To be sure, this testimony, if credited, could lead to the conclusion that Shami and, to a lesser extent, McCall, worked almost exclusively on R&D at FSI. However, the Tax Court explicitly refused to credit the testimony offered by Petitioners, having found it "general, vague, conclusory, . . . self-serving[,] and unreliable."

When the Tax Court's finding depends on the assessment of credibility, "we will not depart from such assessment except in the very rarest of

circumstances."[39]  This case does not pose such a circumstance.  The testimony proffered by Petitioners was general, at times inconsistent, and contradicted by the testimony of James Sie and Ali Ghannad, former FSI employees who testified on the Commissioner's behalf.  Additionally, all of Petitioners' witnesses had an incentive to mislead: as the principal shareholders in FSI, Shami and McCall would be hurt if the deficiency were upheld, and Yates and Pham both were employees of FSI at the time of trial.  The Tax Court did not clearly err in finding that Petitioners had not proven whether Shami and McCall had engaged in qualified research and, if so, how much of their time was spent on such activities.

## C

Petitioners next allege that the Tax Court's finding was clearly erroneous because it ignored the fact that Shami was credited as an inventor on certain patents.  They assert that "the sheer fact that Farouk Shami sought and obtained patents for many of the technologies developed during 2003, 2004 and 2005 indisputably signifies that he is not only 'involved' in research conducted at [FSI], but in control of every element."  This argument is waived and, in any event, fails on the merits.

In their opening brief, Petitioners make the bare unsupported by argument or any authority—that Shami's patents conclusively establish that he was in control of "every element" of research conducted at FSI.  Although Petitioners offer slightly more support in their reply brief, issues not raised in

---

[39] *E.g.*, *Durrett*, 71 F.3d at 517 (quoting *Chamberlain*, 66 F.3d at 732) (internal quotation marks omitted).

a party's opening brief are waived.[40] Petitioners' inadequate briefing constitutes waiver of the issue.[41]

In the alternative, Petitioners' argument fails on the merits. We first note that, although Petitioners refer to multiple patents issued to Shami, only one in which is he is listed as coinventor, appears to relate to research conducted during the tax years at issue in this case. Regardless, issuance of a patent does *not* conclusively prove that a taxpayer has engaged in qualified research. Although issuance of a patent is conclusive evidence that *some* of the requirements of § 41's qualified research test are satisfied,[42] a taxpayer still must prove that the expenditures are of the type deductible under § 174 of the Code—in other words, that they were reasonable R&D expenditures under the circumstances[43]—as well as that "substantially all" of the research activities constituted a "process of experimentation."[44] Furthermore, the taxpayer must tie the research underlying the patent to the "business component," i.e., the particular product, process, software, technique, formula, or invention to be held for sale, lease, or license, or used by the taxpayer in its trade or business,[45] that is affected by the patent.[46] The issuance of a patent with respect to a discrete

---

[40] *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 594 (5th Cir. 2006).

[41] *See, e.g.*, *Coury v. Moss*, 529 F.3d 579, 587 (5th Cir. 2008) (citing *Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185, 190 (5th Cir. 2007)).

[42] Treas. Reg. § 1.41-4(a)(3)(iii) (as amended in 2004) ("[T]he issuance of a patent . . . is conclusive evidence that a taxpayer has discovered information that is technological in nature that is intended to eliminate uncertainty concerning the development or improvement of a business component.").

[43] 26 U.S.C. § 174(e).

[44] Treas. Reg. § 1.41-4(a)(2).

[45] 26 U.S.C. § 41(d)(2)(B).

[46] *See* Treas. Reg. § 1.41-4(b)(1).

business component does not mean that all research conducted by the taxpayer is qualified.

Here, Petitioners make no attempt to explain how much of Shami's wages may be attributed to the invention described in the patent or that such amount was reasonable. They do not explain how Shami's alleged activities constituted a process of experimentation or how the patent credited to Shami relates to the variety of FSI products that they assert were developed by him during the tax years in question. Therefore, even assuming that this argument was not waived, the issuance of the patent crediting Shami does not prove that his wages were QREs.

## VI

Petitioners last assert that the Tax Court's final orders erroneously concluded that Petitioners had not proven FSI's entitlement to QREs related to supply costs. Although the Commissioner asserted a deficiency as to such QREs, Petitioners contend that the Commissioner conceded the issue at trial. They claim that the Tax Court's inclusion of the supply costs in the deficiency was clearly erroneous. The Commissioner contends that Petitioners misread the record and that any concession dealt only with wage-based QREs. We agree with Petitioners and vacate the Tax Court's judgment as to each Petitioner in this narrow respect.

Tax Court Rule 91 requires that the parties stipulate in writing "to the fullest extent to which complete or qualified agreement can or fairly should be reached, all matters" of law or fact relevant to the case.[47] The Tax Court is not permitted to allow a party to a stipulation to qualify or contradict its stipulation unless "justice requires."[48] "This stipulation process has been called 'the bedrock

---

[47] TAX CT. R. 91(a).

[48] TAX CT. R. 91(e).

No. 12-60727

of Tax Court practice . . . ."'[49]  The Tax Court must enforce the plain meaning of language in a stipulation,[50] and "even where the stipulation creates a windfall for the taxpayer, the stipulation is nonetheless binding on the government."[51]

As an initial matter, we observe that Rule 91 does not refer to oral stipulations or concessions at trial.  Both parties assume that an oral concession is binding, which is consistent with existing precedent in the Tax Court.[52]  For the purposes of this appeal, we assume without deciding that an oral, on-record concession is equivalent to a stipulation.

With respect to the effect of the concession, although the Commissioner may have intended the concession to encompass only the wage QREs, the plain meaning of the Commissioner's counsel's statements at trial is that the Commissioner would not challenge FSI's claimed QREs except for those related to the wages of FSI's highly compensated employees.  Counsel for the Commissioner conceded that "experimentation is taking place" and stated that the Commissioner would therefore "focus in on" the production of FSI's highly compensated employees.  Later, when the Commissioner's counsel clarified "what [the Commissioner] perceive[d] to be the issues in th[e] case that [were] remaining," counsel identified only the QREs related to Shami and McCall.  The

---

[49] *Farrell v. Commissioner*, 136 F.3d 889, 893 (2d Cir. 1998) (quoting *Branerton Corp. v. Commissioner*, 61 T.C. 691, 692 (1974)).

[50] *Id.* at 895 (citing *Gridley v. Commissioner*, 73 T.C.M. (CCH) 2727 (1997)); *see also Meyer's Estate v. Commissioner*, 200 F.2d 592, 596 (5th Cir. 1952) ("The Tax Court erred . . . in failing to give effect to the plain meaning and import of the stipulation between the parties.").

[51] *Farrell*, 136 F.3d at 894 (citing *Kampel v. Commissioner*, 634 F.2d 708, 710 n.3 (2d Cir. 1980)).

[52] *Hill v. Commissioner*, 57 T.C.M. (CCH) 1250 (1989); *Church of Scientology of Cal. v. Commissioner*, 83 T.C. 381, 524 (1984) ("Respondent's concession in open court not to seek an increase in the notice of deficiency was the equivalent of a stipulation." (citing *Mass. Ave. Heights Citizens Assoc. v. Embassy Corp.*, 433 F.2d 513, 515 (D.C. Cir. 1970) (per curiam))).

Commissioner's counsel also indicated his agreement with Petitioners' counsel's statement that "the only question" remaining for trial was the QREs related to Shami and McCall. The Commissioner's post-trial brief stated that "only the qualified research expenses claimed for Farouk Shami and John McCall [were] at issue." Finally, the Tax Court itself—at least at one point—understood the case to be limited to the QREs related to Shami and McCall. Viewed together and in context, the series of statements made by the Commissioner's counsel indicate that the Commissioner conceded that the IRS would not challenge FSI's claimed QREs except for those related to highly compensated employees.

Although the Tax Court has discretion to provide relief from a stipulation,[53] that discretion is limited by Rule 91,[54] which provides that the Tax Court must enforce stipulations unless "justice requires." Here, by implicitly granting relief to the Commissioner without considering whether such relief was warranted, the Tax Court abused its discretion.[55] The Commissioner's concession should have been given binding effect. The Tax Court's failure to include the supply costs as proper QREs when calculating each Petitioner's deficiency therefore was clearly erroneous. Accordingly, we vacate the Tax Court's judgments as to each Petitioner and remand for recalculation of the deficiencies in light of the Commissioner's concession.

---

[53] *See Henry v. Commissioner*, 362 F.2d 640, 643 (5th Cir. 1966); *see also Graham v. Commissioner*, 134 F. App'x 704, 706 (5th Cir. 2005) (citing *Henry*, 362 F.2d at 643).

[54] TAX CT. R. 91(e); *see also Farrell v. Commissioner*, 136 F.3d 889, 897 (2d Cir. 1998).

[55] *See Farrell*, 136 F.3d at 897 ("We hold that under these circumstances, in the absence of an examination by the Tax Court of the factors provided by Tax Court Rule 91(e) for relief from a stipulation, the First Stipulation should have been given binding effect . . . .").

No. 12-60727

\*     \*     \*

For the foregoing reasons, the Tax Court's judgments are AFFIRMED IN PART and VACATED IN PART, and the cases consolidated herein are REMANDED for recalculation of the deficiencies consistent with this opinion.